385 P.2d 570

**Annetta KERR, Claimant-Appellant,**

v.

**AKARD BROTHERS TRUCKING COMPANY, James Hamilton Equipment Rentals, Inc., and Fireman's Fund Insurance Company, Defendants-Appellees.**

No. 7194.

Supreme Court of New Mexico.

Oct. 14, 1963.

Easley & Pyatt, Hobbs, for appellant.

Sutin & Jones, Albuquerque, for Akard Bros. Trucking Co.

McAtee, Toulouse, Marchiondo, Rudd & Gallagher, Albuquerque, for J. Hamilton Equip. Rentals and Fireman's Fund Ins. Co.

PER CURIAM.

Upon consideration of motion for rehearing, the original opinion heretofore filed is withdrawn and the following substituted therefor.

MOISE, Justice.

This appeal results from the denial of benefits to appellant under the workmen's compensation law. Suit was filed by appellant against appellees for workmen's compensation because of the death of her husband, James Kerr, on January 13, 1960, in an accident allegedly arising out of and in the course of his employment by appellee, Akard Brothers Trucking Company, hereinafter referred to as "Akard," and appellee, James Hamilton Equipment Rentals, Inc., hereinafter referred to as "Hamilton." It was alleged and appears that appellee, Fireman's Fund Insurance Company, hereinafter referred to as "Fireman's Fund," was the workmen's compensation insurer of Hamilton, and that Akard carried no insurance.

Hamilton and Fireman's Fund answered and denied all the material allegations of the claim, and alleged that deceased was an employee of Akard. They filed a cross claim asserting that if they were held liable on the claim, they would be entitled to judgment over against Akard.

Akard denied that the death of James Kerr arose out of and in the course of his employment by Akard, and all the material allegations of the claim, and as an additional defense alleged that at the time and place of his death, James Kerr was delivering a truck to Akard on behalf of Hamilton, and was in the employ of Hamilton. Akard also alleged it was not an employer subject to the workmen's compensation act.

After a trial, the court made separate findings and conclusions on the Akard and Hamilton claims.

As to Akard the court found it to be engaged in the business of renting dump trucks to general contractors. Compensation was paid at a specified rate per ton from which "there was to be deducted drivers' wages, a percent of the total wages to cover payroll taxes and insurance, and fuel and other miscellaneous costs." The net amount remaining was Akard's rental or compensation for the use of the trucks.

The court also found that Akard never carried workmen's compensation insurance, nor had it ever elected to come within the act; that Akard had drivers "available to go to the jobs with the trucks rented to the contractor from the point of origin of the trucks"; that it "employed" the drivers who drove its trucks; that it "never paid drivers any wages or earnings or compensation for labor, and did not carry them on any payroll as employees"; "that there was no agreement between Hamilton and Akard to reimburse or to pay Hamilton (it would appear this should be Akard) for move-in or move-out costs, including payment of wages to Akard's driver to move trucks to or from the job site."

The court concluded that Akard was not engaged in an extra-hazardous employment

as defined in § 59–10–10, N.M.S.A.1953, and did not have four or more workmen employed as required by § 59–10–12 (e) (this reference is obviously erroneous and should have been § 59–10–4(A)), N.M.S.A.1953; that at the time of his death, decedent "was not engaged in extra-hazardous employment" for Akard; that Akard was not subject to the workmen's compensation act or liable for benefits thereunder.

The court's findings as to Hamilton were to the effect that Akard operated a truck hauling business with a fleet of dump trucks and sub-contracted with road contractors to haul sand and gravel on various road projects. (Note that in findings as to Akard referred to above, it was found that Akard was "in the business of renting dump trucks to general contractors"); that Akard and Hamilton had an oral sub-contract whereby Akard was to haul sand and gravel for Hamilton, by the terms of which Akard "furnished the trucks and secured the drivers to haul * * *" and was to be paid a gross tonnage; Akard was to pay for all oil, gas and repairs on the trucks; Hamilton was to deduct from the gross tonnage "the Akard payrolls, withholding from the same social security, withholding tax, and workmen's compensation deductions * * *." The court made the identical finding concerning move-in and move-out costs as to Hamilton as it did as to Akard. It further found that Akard "employed" its drivers, prepared its own time sheets which were submitted to and paid by Hamilton; that no time sheet was submitted covering move-in or move-out wages for "Akard drivers" on the job where Kerr had worked; that the sub-contract of Akard and Hamilton was completed at 5:00 P.M. on January 12, 1960; that if decedent was an employee of Hamilton his employment ended at that time and that thereafter he was under the exclusive control and employment and was working for the benefit of Akard, and on January 13, 1960, when he met his death he was not an employee of Hamilton.

The court concluded that at the time of the accident resulting in his death, decedent was not an employee of Hamilton, but was an employee of Akard, and that no recovery could be had against Hamilton.

Thus it is seen that no recovery was allowed because the court felt that although decedent may have been an employee of Hamilton prior to 5:00 P.M. on January 12, 1960, such employment had ceased, and that at the time of the accident resulting in his death he was an employee of Akard, an employer not covered by the act because not engaged in an extra-hazardous occupation under the statute (§ 59–10–10, N.M.S.A. 1953), and not employing as many as four workmen.

Appellant relies on three points for reversal of the judgment. She argues that the court erred in deciding the issues as it

did because (1) the decedent's death arose out of and in the course of his employment with Hamilton, or (2) with Akard; or (3) with both Hamilton and Akard.

At the outset we are met with the fact that appellant has failed to attack the findings made by the court as required by our rule 15(6) (§ 21–2–1 (15) (6), N.M.S.A. 1953). She starts her argument under Point I by quoting evidence on the subject of drive-in and drive-out time, and follows this with testimony on the handling of payrolls and workmen. Appellant then cites cases asserted to be in point on the question of whether under the circumstances covered by the quoted testimony, decedent was an employee of Hamilton and acting in the course of his employment when accidentally killed. Points II and III are generally treated similarly.

■ Under our uniform holdings, findings not attacked are accepted as the basis for decision in this court. White v. Wheeler, 67 N.M. 346, 355 P.2d 282. Appellant states in her reply brief that her lengthy references to and quotations from the record in her brief in chief amounted to "an attack on all adverse findings of the court in toto," and then proceeds to point out wherein the findings made by the court are conflicting and contrary to the evidence. In this connection, we call attention to our holding in Bogle v. Potter, 68 N.M. 239, 360 P.2d 650, to the effect that a generalized attack on findings such as was there attempted was not proper, and to Heron v. Garcia, 52 N.M. 389, 199 P.2d 1003, and Gonzales v. Richards, 53 N.M. 231, 205 P.2d 214, where we held that the reply brief was not the proper place to make an attack on the findings.

■ Under the foregoing rules, this appeal requires that we determine if the ultimate facts as found support the conclusions of the court that claimant was not entitled to recover from either Hamilton or Akard, or both.

■ We are impressed that there is a conflict between the findings made by the court concerning the nature of Akard's occupation. In the Akard findings it is determined that Akard was in the business of renting dump trucks, from which it is concluded Akard was not engaged in an extra-hazardous occupation under § 59–10–10, N.M.S.A.1953; whereas, in the Hamilton findings, the business of Akard is found to be the operation of dump trucks and subcontracting with many road contractors to haul sand and gravel on various road projects. No conclusion was incorporated in the Hamilton decision concerning whether Akard's operation was covered by the workmen's compensation law, but we are satisfied that the operation described as hauling sand and gravel and other incidental operations in connection with road construction,

would be an operation within § 59–10–10, N.M.S.A.1953.

■ It would appear also that in the Hamilton decision the court, by its conclusion that Akard had control of decedent's activities, was of the opinion that after 5:00 P.M. on January 12, decedent probably was an employee of Akard. Nevertheless, in the Akard decision there is nothing of this nature—only conclusions relieving Akard from liability because not engaged in an extra-hazardous activity or having four workmen so as to be covered by the act. There is no reasonable way to explain the conclusion that Akard had fewer than four employees except on a theory that the truck drivers were employees of Hamilton, and the court found contrary to this, at least insofar as Kerr is concerned. It follows from the uncertainties and conflicts noted in the findings that the conclusion of no liability as to Akard cannot be said to have support in the findings.

The same thing can be said concerning Hamilton's liability. The trial court was specifically requested to make a determination as to Hamilton's responsibility as the same related not only to claimant but also to Akard.

The court found as to both Hamilton and Akard "that there was no agreement between Hamilton and Akard to reimburse or to pay Hamilton [Akard] for move-in or move-out costs, including payment of wages to Akard's driver to move trucks to or from the job site." As we understand this finding, it goes to the question of whether Hamilton was to pay Akard extra for costs of moving in and moving out in addition to the gross tonnage price for hauling. We do not understand it to mean that payment was not to be made by Hamilton to the truck drivers for any time included in the time sheets for drive-in and drive-out time which would be deducted from the gross amount owing by Hamilton to Akard on the contract. This is true even though the court found that no time had been included covering this period. The evidence is uncontradicted that the drivers were to be paid for this drive-in and drive-out time. Anything to the contrary would not be in accord with reason and practice in today's industrial society, and there was nothing in the proof or the court's findings to suggest it.

■ We do not consider it important that the only payroll available from which to pay Kerr was Hamilton's. In the last analysis, the money was Akard's and payment was from funds due to Akard. However, the compensation insurance on the truck drivers was being carried by Hamilton, and to correctly decide this case it is necessary that a determination be made as to whether the contract between Akard and Hamilton contemplated that this coverage should continue while the drivers were engaged in drive-out time after the comple-

**56**

tion of the actual hauling. Such an agreement would be valid and enforceable and if present should be enforced for the benefit of Akard and the workman. See Brooks v. A. A. Davis & Co., 124 Okl. 140, 254 P. 66; Gillioz v. Freeman (Okl.1961), 363 P.2d 861; Chickasha Plumbing Co. v. Rogers (Okl.1961), 366 P.2d 410; Lindsey v. Texas & N. O. R. Co. (Tex.Civ.App.1935) 87 S.W.2d 864; Southern Underwriters v. Lloyds America (Tex.Civ.App.1939) 133 S. W.2d 151. However, the court made no finding concerning the presence or absence of such an agreement whereby Hamilton and his insurer would be responsible.

In the light of our review of the situation concerning the findings, it seems clear that it is necessary that the cause be remanded so that conflicts therein may be reconciled, and omitted or indefinite findings as to material issues supplied. Compare Isaac v. Seguritan, 66 N.M. 410, 349 P.2d 126; Jontz v. Alderete, 64 N.M. 163, 326 P.2d 95; Apodaca v. Lueras, 34 N.M. 121, 278 P. 197. Thereupon, the court shall make such conclusions as legally follow from the findings so made.

It follows that the judgment of dismissal is reversed and the cause remanded with directions that the court proceed in a manner consistent herewith.

It is so ordered.

CARMODY and CHAVEZ, JJ., concur.