684 P.2d 524

STATE FARM FIRE AND CASUALTY
CO., a corporation, Plaintiff-Appellee,

v.

David D. PRICE, and Denise R. Moya by
and through her natural mother and
next friend, Bessie Moya, and Bessie
Moya and Ruben Moya, individually
and as parents of Denise R. Moya, De-
fendants-Appellants.

No. 7329.

Court of Appeals of New Mexico.

April 3, 1984.

Certiorari Denied May 31, 1984.

Charles A. Durrett, Wayne A. Jordon, Durrett, Jordon & Grisham, P.C., Alamogordo, for plaintiff-appellee.

Leslie Rakestraw, Rio Rancho, for defendants-appellants.

## OPINION

NEAL, Judge.

This insurance case raises issues concerning coverage, the duty of the insurance company to defend, and cooperation of the insured. We also discuss the insured's claim against the insurance company for negligent failure to procure insurance, bad faith, the Unfair Practices Act, and other minor issues.

State Farm Fire and Casualty Company (State Farm) brought this declaratory judgment action to establish that it had no obligation to pay its insured, David Price (Price). Bessie and Reuben Moya (the Moyas) were also named as defendants along with Price because Price assigned, or attempted to assign, his rights against State Farm to the Moyas. We discuss the assignment later in this opinion. The defendants answered and counterclaimed. The counterclaim generally alleged breach of contract.

At the request of the defendants the case was tried to a jury. After all of the evidence was presented, the trial court directed a verdict in favor of State Farm, ruling that Price had no coverage. The trial court directed a verdict against the defendants on their counterclaim and they appeal.

On November 3, 1979, Price and his girlfriend, Karen Herndon (Herndon), were driving south on Interstate 25. Price was driving Herndon's car. The car struck Denise Moya (the Moya's daughter) as she was getting off a school bus near Socorro. Price's negligence is not an issue in this appeal, nor is notification of the accident; State Farm admits it was notified.

In July 1980, the Moyas filed suit for personal injury against Price. Because Price was driving his girlfriend's car with her permission he was covered under her insurance policy with United States Automobile Association (USAA). On August 25, 1980, the law firm of Civerolo, Hansen & Wolf entered an appearance on behalf of Price and USAA in the personal injury suit. Two days later Wayne Wolf filed an answer.

It is undisputed that neither Price nor anyone acting for him ever forwarded the personal injury complaint to State Farm.

Price also talked to an Alamogordo attorney, S. Thomas Overstreet. On May 6, 1981, Overstreet sent a letter to Ed Scarbrough, a State Farm agent in Alamogordo. This letter, which we will set out later in this opinion, stated the caption of the personal injury case in which Price was a defendant. State Farm raises an issue concerning the admissibility of this letter. We address that issue in our discussion of State Farm's duty to defend.

On May 12, 1981, State Farm had Price sign a Request for Claim Service and Non-Waiver of Rights. This form stated: "It is questionable whether coverage applies because the vehicle you were driving was apparently available for your regular and frequent use. * * * [State Farm] may have no obligation to defend or indemnify * * *."

On May 22, 1981, Overstreet sent another letter to Alberto Munoz, a State Farm field claim representative in Las Cruces. This letter referred to a lawsuit against Price but did not contain a case caption or number. It states that the plaintiffs are willing to settle their claim and that "[o]n behalf of David Price, we recommend that you accept this offer." The plaintiffs are not named in the letter. On August 19, 1981, a Stipulation and Settlement Agreement was entered into by Price, USAA and the Moyas. USAA settled with the Moyas for $50,000, the amount of its coverage. Price and the Moyas agreed that judgment would be entered against Price for $210,-000. Price was given a $50,000 credit for USAA's settlement; his exposure was $160,000. Price also assigned his rights against "State Farm Mutual Automobile Association" to the Moyas. State Farm was not a party to the personal injury suit nor did it participate in or consent to this settlement.

On November 6, 1981, State Farm filed the declaratory judgment action which is the subject of this appeal. The case was tried to a jury and on March 31, 1983, following trial, the trial court granted State Farm a directed verdict and directed a verdict against the defendants on their counterclaim. At the request of the defendants the trial court entered findings and conclusions in support of its directed verdict.

 A directed verdict is proper only when the jury could not reasonably and legally reach any other conclusion. *See* NMSA 1978, Civ.P.R. 50 (Repl.Pamp.1980); *Strickland v. Roosevelt County Rural Electric Cooperative*, 94 N.M. 459, 612 P.2d 689 (Ct.App.1980). If reasonable minds cannot differ the court has a duty to take the case from the jury and direct a verdict. *Owen v. Burn Construction Co.*, 90 N.M. 297, 563 P.2d 91 (1977). In reviewing the motion for a directed verdict the trial court is to review the evidence and all reasonable inferences in the light most favorable to the party resisting the directed verdict, and the same standard applies to

an appellate court. *Archuleta v. Pina*, 86 N.M. 94, 519 P.2d 1175 (1974).

### 1. Coverage Under the "Non-Owned Automobile" clause.

At the time of the accident Price was driving Herndon's car. State Farm's position was that Karen was living with Price, that Price could and did use her car whenever he wanted to, and therefore under the "non-owned automobile" clause in Section I of the policy State Farm did not cover Price when he was driving Karen's car. "Non-owned automobile" is defined in the policy:

> **Non-Owned Automobile** means an **automobile, trailer** or detachable living quarters unit, not
>
> (1) owned by,
>
> (2) registered in the name of, or
>
> (3) furnished or available for the frequent or regular use of the named insured or any **resident** of the same household, other than a **temporary substitute automobile**[.]

The purpose of this clause is to protect an insurer against a situation where an insured purchases a policy covering one car and could then be covered as to all automobiles he frequently uses. *See* 1 R. Long, *The Law of Liability Insurance* § 4.07 (1983).

The trial court ruled that Karen's car was furnished or available for the regular and frequent use of Price and directed a verdict in favor of State Farm.

Price testified that Karen had lived with him since early July, 1979. Karen testified that between July 4, 1979 and November 3, 1979, the date of the accident, Price drove her car twenty times. This is approximately once every six days.

 Under the "furnished or available" clause, the test is the availability of an automobile for regular use, not the frequency of the use. 1 Long § 4.07. The evidence supports the directed verdict. Further, on appeal the defendants have not cited any evidence to contradict the clear inference that Karen's car was available for Price's use, nor have they argued that

coverage under this policy provision was a jury question. Further, they have not attacked the finding that Karen's car was furnished and available for the regular use of Price. Findings not attacked on appeal are accepted as the basis for decision in the appellate court. NMSA 1978, Civ.App.R. 9 (Cum.Supp.1983); *Kerr v. Akard Brothers Trucking Co.*, 73 N.M. 50, 385 P.2d 570 (1963).

### 2. Duty to defend.

The defendants contend that the trial court erred in concluding that State Farm had no duty to defend Price in the Moyas' personal injury suit. The court found that Price never delivered a copy of the complaint in the personal injury suit to State Farm and that neither Price nor anyone acting for him ever made a demand on State Farm to defend the personal injury suit.

 The obligation of an insurance company to pay is independent of its obligation to defend. *Lujan v. Gonzales*, 84 N.M. 229, 501 P.2d 673 (Ct.App.), *cert. denied*, 84 N.M. 219, 501 P.2d 663 (1972). The insurance company is obligated to defend when the complaint filed by the claimant alleges facts potentially within the coverage of the policy. *Foundation Reserve Ins. Co. v. Mullenix*, 97 N.M. 618, 642 P.2d 604 (1982); *Satterwhite v. Stolz*, 79 N.M. 320, 442 P.2d 810 (Ct.App.1968); 14 *Couch on Insurance 2d* §§ 51:44; 51:42 (1982). The test is not the ultimate liability of the insurance company, Couch § 51:52, but is based solely on the allegations of the complaint. 14 Couch § 51:42. Only where the allegations are completely outside policy coverage may the insurer justifiably refuse to defend. 14 Couch §§ 51:45; 51:46; 51:55. Also, any doubt about whether the allegations are within policy coverage is resolved in the insured's favor. 14 Couch, § 51:49.

 USAA is the primary carrier and had the primary duty to defend. State Farm, which provided excess insurance, is not relieved of any duty to defend, even

though the primary carrier, USAA, actively defended Price in the personal injury suit. *Lujan v. Gonzales; State Farm Mut. Auto Ins. Co. v. Foundation R. Ins. Co.,* 78 N.M. 359, 431 P.2d 737 (1967).

The Moyas' complaint in the personal injury suit alleges negligence by Price. It does not specify whose car he was driving, only that Price was "operating a vehicle along the highway," and that "Price was careless and negligent in the operation of the vehicle he was driving * * *." These allegations appear to come within policy coverage. Nothing in the Moyas' complaint indicates a state of facts which would be completely outside of policy coverage.

 However, before the duty to defend arises there must be a demand. 7C Appleman, *Insurance Law and Practice* § 4691 (1979). The trial court found as a matter of law that no demand to defend was made on State Farm. We hold that reasonable minds could differ about whether a demand was made, and reverse.

Price's Alamogordo attorney, S. Thomas Overstreet, wrote two letters to State Farm. The first letter, dated May 6, 1981, states in relevant part:

Mr. Ed Scarbrough
State Farm Insurance
614 10th Street
Alamogordo, NM 88310
Re: David D. Price
 Policy # S057–789–A09–31
Dear Mr. Scarbrough:

Pursuant to our conversation on May 5, 1981, the attorney who represents the insurance carrier for the primary liability on the accident of November 3, 1979, has contacted us regarding any excess coverage David Price might have. It appears to me the policy with you would grant David Price coverage.

Mr. Price advised Mr. Ray Sides has investigated the accident and David Price notified your company shortly after the accident in 1979.

I am not certain if my client has a copy of the summons or complaint but the caption of the case in which he is being sued is as follows: In the District Court of the State of New Mexico, County of Socorro, *Denise R. Moya, et al v. Socorro Consolidated School District, et al,* No. CV–80–61.

Mr. Wayne Wolf, Attorney at Law, of Albuquerque is representing United Services Automobile Association who had the insurance on the car that was involved in the accident. The vehicle did not belong to Mr. Price.

 \* \* \* \* \* \*

This letter, while not expressly demanding that State Farm defend, states that Price was being sued, and the caption and number of the lawsuit. This letter was admitted over State Farm's objection and considered by the trial court. On appeal State Farm contends that the letter is inadmissible because there was no foundation.

 The original was not introduced. Instead the carbon copy which had been received by Price was introduced. Price testified that he received the letter and that the signature appeared to be Overstreet's. This was an adequate foundation for admitting the carbon copy. NMSA 1978, Evid.R. 901 (Repl.Pamp.1983).

At oral argument counsel for State Farm argued that the letter was not in State Farm's files and was never received. This does not mean that Price's carbon copy is inadmissible. There is an inference that because the carbon copy was received the original was mailed to and received by State Farm. The carbon copy is relevant evidence. NMSA 1978, Evid.R. 401 (Repl. Pamp.1983). On remand it is for the jury to decide whether Price's receipt of the carbon copy establishes State Farm's receipt of the letter. Further, if there is evidence introduced that the original was properly addressed and mailed there is a presumption that it was received by State Farm. *Garmond v. Kinney,* 91 N.M. 646, 579 P.2d 178 (1979). State Farm may rebut this by introducing evidence that the letter was not received. *See Garmond;* NMSA 1978, Evid.R. 301 (Repl.Pamp.1983).

The second letter states in relevant part:

Mr. Alberto (Jackie) Munoz
Field Claim Representative
State Farm Insurance
P.O. Box 1180
Las Cruces, NM 88001
Re: David Price
Dear Mr. Munoz:

I have been contacted by the Plaintiff's attorney regarding the lawsuit against David Price.

They are willing to settle their claim within all applicable policy limits.

On behalf of David Price, we recommend that you accept this offer.

\* \* \* \* \* \*

State Farm admits having received this letter. The original in State Farm's files contains pencil notations by Evan K. Lucas, Superintendent of Insurance for State Farm. The notations are: "?what lawsuit," "what is their claim," and "need more info." This letter gives State Farm actual knowledge that there was a lawsuit against its insured, Price, that settlement was possible, and that they were requested to settle.

We believe that reasonable minds could differ about whether these two letters were a demand to defend and that the directed verdict against the defendants was improper. This is especially true because there is in evidence a memo, from J.R. Turner of USAA, to State Farm. This memo, issued September 30, 1981, states:

> I responded to your letter of May 27, 1981 by memo of 6–2–81 asking you to contact Mr. Wayne Wolf P.O. Drawer 887, Albuquerque, N.M. 87103//505–842–8255. This claim has been settled by payment of our policy limits as I think you well know so I don't understand your letter of Sept. 23, 1981. *If you were not informed it is because you failed and refused to keep yourself so.* (Emphasis added.)

The two letters and this memo can support a conclusion that State Farm knew of the lawsuit and knew of the possibility of settlement, yet consciously disregarded what was happening. It is true that no suit papers were forwarded to State Farm

and that notice of the impending settlement could have been more clearly given. However, under the circumstances reasonable minds could differ about whether there was a sufficient demand to defend on State Farm, about State Farm's good faith, and about the insured's conduct. These are properly issues for the jury.

We note that the defendants have argued that under *Mullenix*, State Farm waived its right to bring the declaratory judgment action because it did not defend in the primary action. However, in *Mullenix* there was a clear demand to defend. That distinguishes it from this case. Because we hold that there is a jury question concerning the demand, if any, on State Farm, we reject defendants' argument that *Mullenix* requires, as a matter of law, a holding that State Farm waived its right to bring a declaratory judgment action.

### 3. Failure to cooperate.

The trial court concluded that Price "materially breached the insurance contract by failing to cooperate" with State Farm and that he "materially breached the insurance contract by failing to deliver to [State Farm] a copy of the Summons or Complaint." The court found that Price failed to provide information which was necessary for State Farm to evaluate the claim and determine whether the car was a "non-owned automobile." The court also found that Price voluntarily assumed the obligation to pay the judgment in the personal injury suit by entering into a stipulation and settlement agreement without notifying State Farm, contrary to a provision in the policy.

When an insurance company seeks to avoid its obligations under a policy by claiming that the insured materially breached policy provisions, it must demonstrate substantial prejudice as a result of the breach. *Foundation Reserve Ins. Co. v. Esquibel,* 94 N.M. 132, 607 P.2d 1150 (1980). Also, the obligation to deal fairly and honestly rests equally upon the insurer and the insured. *Modisette v. Foundation*

*Reserve Ins. Co.*, 77 N.M. 661, 427 P.2d 21 (1967). We believe that in most cases substantial prejudice and whether the insurance company and the insured acted fairly are also questions for a jury.

■ There is evidence in the record to support an inference that State Farm knew a suit had been filed, or knew of facts which imposed a duty upon it to find out whether litigation involving its insured was pending, and that it consciously disregarded the facts and failed to defend its insured. The record also contains evidence which, if believed by a jury, supports State Farm's contention that Price failed to cooperate, causing substantial prejudice to the insurer. There is also evidence which, if believed by the factfinder, could support State Farm's claim of collusion between Price, USAA and the Moyas. The parties in the personal injury suit stipulated to the amount of damages, without State Farm's participation, knowing that State Farm might be liable to pay a large part of the settlement. The facts on these issues are not so one-sided that a directed verdict should have been given. Reasonable minds could differ on the evidence.

State Farm's position is that Price failed to cooperate and breached the insurance contract. However, whether or not there was a demand on State Farm is crucial in this case. If there was a demand then State Farm should have defended because the Moyas' complaint comes within policy coverage. When an insurance company fails to defend after a demand, it suffers serious consequences.

■ These consequences include loss of the right to claim that the insured breached policy provisions, 14 Couch § 51:57, including the policy provisions requiring the insured to forward suit papers. 14 Couch § 51:57. The insurance company loses the right to claim that the insured did not cooperate, 14 Couch § 51:76, and the right to claim that the insured settled without its consent. 14 Couch § 51:70. When an insurance company unjustifiably fails to defend it becomes liable for a judgment entered against the insured and for any settlement entered into by the insured in good faith. 14 Couch, §§ 51:58, 51:71. The settlement must be reasonable. 14 Couch § 51:71. On retrial jury issues may include Price's good faith in making the settlement and the reasonableness of its amount.

## 4. Negligent failure to procure insurance.

■ The trial court directed a verdict in favor of State Farm on this issue. The defendants claim that Price requested "full coverage" and State Farm negligently failed to insure him while he was driving Karen's car. *See Jernigan v. New Amsterdam Casualty Co.*, 74 N.M. 37, 390 P.2d 278 (1964). This argument is without merit. The directed verdict was proper.

The defendants argue that Price requested "full coverage" and this could be interpreted to mean coverage while driving any car, including Karen's car. Concerning "full coverage," Price states:

[Price]: I asked for coverage for my truck and to go ahead and give me the full coverage, you know, whatever.

Q. By full coverage, what did you mean?"

[Price]: Well, instead of just liability, to go ahead and get, you know, she listed out on the back here, there is four or five different numbers here, and I said, just give me the full coverage. Whatever that meant.

Further testimony by Price established that the bank had a lien on his truck, and that the bank required certain coverage. Price stated that he wanted insurance on the truck to satisfy the bank. All of the testimony establishes that "full coverage" referred only to Price's truck. Price never specified that he wanted coverage while driving Karen's car. On this evidence reasonable minds could not differ on the meaning of Price's request for "full coverage."

■ The defendants also argue that State Farm never told him he was not covered while driving Karen's car and that when State Farm found out that Karen

was living with him State Farm had a duty to cover Price while he was driving Karen's car. We reject these arguments. First, the insured is under a duty to read his policy. Receipt and retention of an insurance policy without objection by one who has had an opportunity to examine it for a reasonable time is regarded as an acceptance of its terms. *Western Farm Bureau Mutual Ins. Co. v. Barela*, 79 N.M. 149, 441 P.2d 47 (1968). The insured is required to familiarize himself with its terms. *Id.* Second, the insured, and not the insurance company, bears the burden of managing his business affairs, including insurance coverage. In the absence of special circumstances, not present here, the insurance company is not required to manage people's affairs. *Cf., Britz v. Joy Mfg. Co.*, 97 N.M. 595, 642 P.2d 198 (Ct.App.), *cert. quashed*, 98 N.M. 51, 644 P.2d 1040 (1982). (Holding insurance company had no obligation to advise workman of effect of settlement). In this case there was no request for coverage while driving Karen's car. Price did tell State Farm Karen had moved in with him and, concerning a homeowner's policy, he wanted to make sure Karen's personal property in the house was covered. State Farm complied with that request.

Unlike *Jernigan* there was no request for specific coverage. Price never requested that he be covered while driving Karen's car. Reasonable minds could not differ on that. The directed verdict in favor of State Farm on the negligent failure to procure insurance issue was correct.

**5. Bad faith.**

On retrial, State Farm's bad faith is also a fact issue for the jury. No New Mexico case has decided whether failure to defend can support a finding of bad faith. *Lujan v. Gonzales* held that failure to settle, after being requested to do so, can amount to bad faith. It has also been held that bad faith can exist when an insurance company unreasonably delays making payments under the insurance contract. *See Travelers*

*Ins. Co. v. Montoya*, 90 N.M. 556, 566 P.2d 105 (Ct.App.1977).

*Lujan v. Gonzales* contains a good discussion of bad faith, defined as "an absence of good faith by an insurer in its relations with its insured." *Lujan* defines "good faith":

We use the term "good faith" in this case to mean an insurer cannot be partial to its own interests, but must give its interests and the interests of its insured equal consideration.

84 N.M. at 236, 501 P.2d at 680.

*Lujan* did not decide whether an insurer's duty to proceed in good faith is an implied covenant in the insurance contract or a tort, but did hold that the duty exists.

We believe that considering the law on good faith in *Lujan*, failure to defend after being requested to do so may amount to bad faith, depending on the facts. This is especially true because the contract of insurance contains a provision that the insurance company agrees "to defend * * * even if any of the allegations of the suit are groundless, false, or fraudulent * * *." We also believe there is evidence in this case which could support a finding that State Farm closed its eyes to the facts and acted in bad faith.

**6. Unfair Practices Act.**

The defendants contend that the trial court erred in directing a verdict against them on their counterclaim because there was a violation of the Unfair Practices Act, NMSA 1978, Sections 57-12-1 to -16 (Orig.Pamp. and Cum.Supp.1983). We assume, but do not decide, that the Uniform Practices Act applies to insurance companies.

In their Answer to Second Amended Complaint and Counterclaim for Damages the defendants state:

That State Farm made false and/or misleading statements in that its agents and/or employees agreed to provide Price with the automobile insurance that he requested which tended to deceive or mislead Defendant Price to his detriment, which constituted an unfair or de-

ceptive trade practice under the Unfair Trade Practices Act, 57–12–1 et seq., N.M.S.A.

This claim is the same as the negligent failure to procure insurance claim raised by the defendants. Assuming, but not deciding, that this claim comes within the Unfair Practices Act, the defendants failed to present any evidence to support this claim. (*See* our discussion in Point 4 of this opinion.)

The defendants also claim that State Farm's conduct constituted an unconscionable trade practice. *See* § 57–12–2(D)(1) and (2). On appeal the defendants have stated that "[n]o one ever explained to Price what was in his policy," arguing that this constitutes an unconscionable trade practice. As discussed in Point 4 of this opinion, it was Price's duty to read and familiarize himself with his policy. Under the circumstances in this case State Farm did not have to explain to Price that he was not covered while driving Karen's car.

The defendants also state that Price has paid premiums to State Farm since January 9, 1978, and that he has only made one claim and received no benefits. This is to support their assertion that State Farm is guilty of an unconscionable trade practice because there is a "gross disparity between the value received by a person and the price paid." § 57–12–2(D)(2). However, the defendants have not represented that this argument was ever presented to the trial court, nor have they cited us to the transcript to show that this argument was presented to the trial court. A party claiming a violation of the Unfair Practices Act must rely on one or more of the specific violations enumerated in the Act and when the trial court is going to rule and deny relief, present that specific violation to the trial court. *Richardson Ford Sales, Inc. v. Johnson*, 100 N.M. 779, 676 P.2d 1344 (Ct.App.1984). Also, on appeal a party must cite to the transcript. The defendants have not shown us where they specified to the trial court what the unconscionable trade practice was. NMSA 1978, Civ. App.R. 9.

The defendants have also raised an issue concerning the Unfair Insurance Practices Act, NMSA 1978, § 59–11–9 to –22. However, that Act does not provide a private cause of action, as defendants admit. The defendants argue that any violation of the Unfair Insurance Practices Act is a per se violation of the Unfair Practices Act. Having ruled that on retrial there is no issue concerning the Unfair Practices Act, we need not consider this argument.

## 7. Other issues.

Under this point we consider minor issues raised in this appeal.

First, State Farm argues that because the defendants requested the trial court to make findings and conclusions to support its directed verdict, on appeal we should use the substantial evidence rule to decide whether the trial court's findings and conclusions are supportable. No authority is cited for this proposition. Also, we fail to see why we should penalize the defendants, who are entitled to a directed verdict standard of review, because they attempted to make a better record for review.

Second, State Farm argues that the defendants were not entitled to a jury trial because they did not pay the jury fee. NMSA 1978, Civ.P.R. 38(d) (Cum.Supp. 1983). The record does not show this. Also, this argument was not raised in the trial court. We do not consider it. NMSA 1978, Civ.App.R. 11; *McNabb v. Warren*, 83 N.M. 247, 490 P.2d 964 (1971).

Third, State Farm argues that under the assignment by Price to the Moyas of his rights against "State Farm Mutual Automobile Association" the Moyas have no rights against State Farm Fire and Casualty. We agree. It is undisputed that State Farm Mutual Automobile Association and State Farm Fire and Casualty are two distinct entities and that Price was insured by State Farm Fire and Casualty. Price had no rights against State Farm Mutual

Automobile Association. By the assignment to the Moyas of Price's rights against State Farm Mutual Automobile Association the Moyas received what Price had—nothing. This can be cured by executing a new assignment under which Price assigns his rights against State Farm and Casualty.

### Conclusion.

It is established that Price's policy did not cover him; the directed verdict in favor of State Farm on the issue of coverage under the "non-owned automobile" provision in the policy is affirmed. However, we reverse the directed verdict against the defendants on their counterclaim. A jury should decide whether there was a sufficient demand to defend and whether State Farm failed to defend. There are also jury issues concerning Price's failure to cooperate, whether State Farm was prejudiced by Price's failure to cooperate, whether the settlement was made in good faith and whether it was reasonable in amount. State Farm's bad faith may be a jury issue if the defendants introduce sufficient evidence.

On remand there is no issue as to:

(1) coverage under the non-owned automobile provision;

(2) negligent failure to procure insurance; and

(3) the Unfair Practices Act.

By our opinion we do not mean to suggest that one party is to blame. We believe that a jury, and not the court, should evaluate the conduct of the insurance company and the insured. We would also comment that on retrial it would be wise to submit a special interrogatory on the demand issue, and other special interrogatories may prove useful if this case comes before us again.

IT IS SO ORDERED.

DONNELLY, C.J., and MINZNER, J., concur.