**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 9 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

WILLARD WESLEY WINTERS, JR.,
also known as Wes Winters, Jr.;
KAY PAULETTE WINTERS, also
known as Kay Winters Goffena, doing
business as Wes Winters Resort Park,
individually and as debtors in
possession of the Wes Winters Resort
Park; JAMES E. BURKE,

      Plaintiffs-Appellants,

v.

TRANSAMERICA INSURANCE
COMPANY, a foreign insurance
corporation,

      Defendant-Appellee.

No. 98-2000
(D.C. No. CIV. 96-1604-RLP/WWD)
(D. N.M.)

---

**ORDER AND JUDGMENT** *

---

Before **BRORBY, McKAY,** and **BRISCOE** , Circuit Judges.

---

\*      This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1.9(G). The case is therefore ordered submitted without oral argument.

Plaintiffs appeal from the district court's grant of summary judgment in favor of defendant Transamerica Insurance Company (Transamerica); denial of their motion for partial summary judgment; and denial of their motion to alter, amend, or reconsider. Because we conclude Transamerica breached its duty to defend its insured in the underlying action, but did not violate state statute or the duty of good faith, we affirm in part and reverse in part the summary judgment granted in the insurer's favor, affirm the denial of plaintiff's motions, and remand the case for further proceedings.

I. Background

Plaintiffs Willard Wesley Winters, Jr. and Kay Paulette Winters owned and operated the Wes Winters Resort Park (Resort Park), a mobile home park insured by Transamerica. The Resort Park opened in January 1987, advertised as an "adult" residential community. Resort Park tenants Judy and Clyde Mercer, and Susan and Steven Anderson, purchased mobile homes from plaintiffs in 1987 and 1988, respectively. After the Fair Housing Amendments Act of 1988 was

-2-

enacted, plaintiffs began advertising the Resort Park as a "retirement community." Thereafter, when the Mercers and Andersons attempted to sell their mobile homes, Mr. Winters informed them that he would not approve rental of the lot to persons under the age of 55 or to anyone with small children. He also made statements indicating a preference for tenants who were not Hispanic or Jewish.

The Mercers and the Andersons filed complaints with the Department of Housing and Urban Development (HUD), alleging violations of the Fair Housing Act. In retaliation, Mr. Winters and his agents began a campaign of harassment against the Mercers and Andersons. This harassment included entering the tenants' homes without their consent; shining spotlights and headlights into their homes late at night; slamming car doors in front of their homes at night; tampering with their mail; sitting in cars outside their homes for extended periods; following them around the park; throwing newspapers on their roofs; agitating their dogs with silent whistles; and refusing to maintain their lots.

HUD brought an administrative action against Mr. Winters, alleging housing discrimination and retaliation. When he tendered the administrative complaint to Transamerica, however, the insurer advised him that the charge did not create a duty to defend or indemnify under the policy. HUD then brought a successful federal action against Mr. Winters, obtaining a judgment for $142,397.63 in compensatory and punitive damages. Plaintiffs, as owners of the

Resort Park, have filed bankruptcy. Plaintiff James Burke is the Chapter 7 trustee in the bankruptcy proceeding.

On October 16, 1990, plaintiffs brought this action against Transamerica, seeking more than two million dollars in damages caused by the insurer's alleged breach of contract, breach of its duty of good faith and fair dealing, and violations of the New Mexico Unfair Practices Act and the New Mexico Unfair Insurance Practices Act. The district court granted summary judgment in favor of Transamerica, finding the insurer had no duty to defend or indemnify Winters because the HUD allegations clearly fell outside the policy's coverage. This appeal followed.

Plaintiffs argue the district court erred in granting summary judgment in favor of Transamerica because HUD's allegations implicated both the advertising injury (disparagement, right to privacy, infringement of title) and personal injury (right of private occupancy) policy coverages. They argue further that the court erred in denying their motion for partial summary judgment, because they were entitled to judgment as a matter of law on their claims that the insurer breached the contract, breached its duty of good faith and fair dealing, and violated the New Mexico Unfair Insurance Practices Act and the Unfair Practices Act.

## II.  Analysis

We review summary judgment rulings de novo, applying the same standard as the district court.  See Kidd v. Taos Ski Valley, Inc., 88 F.3d 848, 851 (10th Cir. 1996).  Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  We view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.

### A.  Duty to Defend and Indemnify

Because this is a diversity case, we apply the substantive law of the forum state.  See Novell, Inc. v. Federal Ins. Co. , 141 F.3d 983, 985 (10th Cir. 1998).  Under New Mexico law, an insurer's duty to defend arises when the allegations in the complaint, together with any other factual information known to the insurer, bring the claim within the arguable or potential coverage of the policy.      See Bernalillo County Deputy Sheriffs Ass'n v. County of Bernalillo   , 845 P.2d 789, 791 (N.M. 1992);   Marshall v. Providence Wash. Ins. Co.   , 951 P.2d 76, 78 (N.M. Ct. App. 1997).  This duty arises even if the complaint "fails to state facts with sufficient clarity so that it may be determined from its face whether or not the action is within the coverage of the policy, provided the alleged facts tend to

show an occurrence within the coverage." Foundation Reserve Ins. Co. v. Mullenix , 642 P.2d 604, 605-06 (N.M. 1982) (quotation omitted).

An insurer may justifiably refuse to defend only when the allegations take the claim completely outside the policy, see Marshall , 951 P.2d at 78, and "any doubt about whether the allegations are within the policy coverage is resolved in the insured's favor," State Farm Fire & Cas. Co. v. Price , 684 P.2d 524, 528 (N.M. Ct. App. 1984), overruled on other grounds , Ellingwood v. N.N. Investors Life Ins. Co. , 805 P.2d 70, 76 (N.M. 1991). If there is a question regarding coverage, the insurer must tender a defense until relieved of this duty by the court in which the action is proceeding. See Lopez v. New Mexico Pub. Sch. Ins. Auth. , 870 P.2d 745, 749 (N.M. 1994); Mullenix , 642 P.2d at 606.

Here, the HUD charge alleged the following conduct: (1) discrimination against the public in the provision of housing; (2) discrimination against the tenants in the terms and conditions of their lot rental; (3) discrimination against the tenants by restricting the sale of their mobile homes; and (4) retaliation against the tenants for filing the discrimination claims. The retaliation claim alleged that Winters "harassed complainants in various ways," and that these acts of "unlawfully harassing complainants" violated the Fair Housing Act by "coercing, intimidating, threatening or interfering with the exercise or enjoyment of rights," and that such conduct caused the tenants to suffer "emotional distress."

Appellant's App. at 98-99. Because we conclude this claim implicated the policy's coverage for invasions of the right of private occupancy, there is no reason to discuss in detail whether the charge also raised claims under the advertising injury coverage. [1]

Section I(B) of the policy provides coverage for "personal injury" liability, which is defined in section V(10)(c) to include injuries arising from the "wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor." [2] Id. at 148. We note that the scope of coverage

---

[1]     Although we do not discuss this issue in detail, we agree with the district court that HUD's allegations did not implicate the advertising coverages for violating a person's privacy, disparaging a person's goods, or infringing a title. Although we agree that plaintiffs' advertisement of the Resort Park as a retirement community was a "publication," it did not disparage tenants' goods or infringe their title, as those terms are reasonably construed. There are no other facts alleged showing a publication. See Western Commerce Bank v. Reliance Ins. Co. , 732 P.2d 873, 875-76 (N.M. 1987) (holding allegations did not state claim within policy coverage absent claim of "publication" and court would not imply claim from facts alleged). In addition, the facts alleged do not support plaintiffs' inferences regarding the tenants' right to privacy. Therefore, Transamerica's denial of a defense and indemnity under these coverages neither breached the contract nor violated the insurer's duty of good faith and fair dealing.

[2]     When plaintiffs first purchased insurance in January 1987, the commercial liability policy did not contain this language. However, the policy was amended in 1988 to include coverage for invasions of the right of private occupancy. As the alleged discrimination and retaliation took place in 1989, see Appellant's App. at 98, 349, we conclude this provision was in effect when the underlying events occurred.

provided by this section is unclear, as the qualifier "by or on behalf of its owner, landlord or lessor" could modify either the term "invasion" or the term "room, dwelling or premises." Several courts have disagreed whether this lack of clarity renders the phrase ambiguous. Compare United States Fidelity & Guar. Co. v. Goodwin, 950 F. Supp. 24, 27 (D. Me. 1996) (holding policy unambiguously required that wrongful acts be committed by or on behalf of property's owner, landlord or lessor) and TerraMatrix, Inc. v. United States Fire Ins. Co., 939 P.2d 483, 489 (Colo. Ct. App. 1997) (same) with Blackhawk-Central City Sanitation Dist. v. American Guar. & Liab. Ins. Co., 856 F. Supp. 584, 590 (D. Colo. 1994) (finding ambiguity in whether phrase modified "premises" or "invasion" and construing policy in favor of coverage). We need not determine whether the provision is ambiguous, as we conclude the only reasonable construction of its coverage includes acts taken by plaintiffs, as the Resort Park's owners, landlords, or lessors, against their tenants' occupancy rights.

Here, HUD alleged acts taken by Mr. Winters, as a landlord, against his tenants, which harassed, coerced, intimidated and threatened the tenants, causing them emotional distress. We think these allegations potentially raise a claim that the tenants' right to private occupancy was invaded, or at a minimum, that such coverage was not definitively precluded. See Price, 684 P.2d at 528 ("Only where the allegations are completely outside policy coverage may the insurer justifiably

-8-

refuse to defend[, and] any doubt about whether the allegations are within policy coverage is resolved in the insured's favor."). This is especially so given the broad range of interpretations given to the term "right of private occupancy." Compare Lime Tree Village Community Club Ass'n v. State Farm Gen. Ins. Co. , 980 F.2d 1402, 1403-05, 1407 (11th Cir. 1993) (holding, under similar facts, that insurer had duty to defend potential invasion of right to occupancy); Titan Holdings Syndicate, Inc. v. City of Keene , 898 F.2d 265, 273 (1st Cir. 1990) (holding invasions of the right of private occupancy included interference with use and enjoyment of property by noxious odors, light, and noise); with Columbia Nat'l Ins. v. Pacesetter Homes, Inc. , 532 N.W.2d 1, 9 (Neb. 1995) (holding "the right of private occupancy is the legal right to occupy premises, not the right to enjoy occupying those premises"). Transamerica, therefore, was required to defend plaintiffs until it took the appropriate steps to be relieved of that duty. See, e.g. , Valley Improvement Ass'n v. United States Fidelity & Guar. Corp. , 129 F.3d 1108, 1116 (10th Cir. 1997) (finding insurer breached duty to defend when complaint did not definitively foreclose coverage).

Under New Mexico law, an insurer who breaches the duty to defend is liable not only for defense costs, but also for indemnification of the insured, even if such liability would otherwise have been excluded by the policy. See id. at 1125-26 (holding, under New Mexico law, an insurer who unjustifiably fails to

defend is liable for the resulting judgment or settlement, regardless of any coverage defenses); American Gen. Fire & Cas. Co v. Progressive Cas. Co., 799 P.2d 1113, 1117 (N.M. 1990) ("An insurer suffers serious consequences upon its unjustified failure to defend after demand, including . . . liability for a judgment entered against the insured."); Price, 684 P.2d at 531 (holding even though underlying claim was outside of policy coverage, insurer who breached duty to defend was liable on the judgment, and noting that one consequence to an insurer who unjustifiably fails to defend is that "it becomes liable for a judgment entered against the insured"). Because we conclude that Transamerica breached its duty to defend Mr. Winters, the insurer is liable for both his legal defense costs and indemnification on the judgment.

## B. Bad Faith

We conclude, however, that Transamerica is not liable for tort damages, because its decision did not amount to a bad faith refusal to defend as a matter of law. An insurer's incorrect decision regarding coverage, without more, does not establish bad faith. See United Nuclear Corp. v. Allendale Mut. Ins. Co., 709 P.2d 649, 654 (N.M. 1985) (reversing bad faith finding when, although insurer wrongly withheld payment, there were legitimate reasons to question amount of damages); Price, 684 P.2d at 532 (implying failure to defend alone does not show bad faith). To show bad faith, there must be no reasonable basis for denying the

claim. See United Nuclear Corp., 709 P.2d at 654; Mitchell v. Intermountain Cas. Co., 364 P.2d 856, 858-59 (N.M. 1961); see also Jessen v. National Excess Ins. Co., 776 P.2d 1244, 1246 (N.M. 1989) (noting jury instruction defining bad faith as refusal to pay or delay in paying claim for frivolous or unfounded reasons), overruled on other grounds by Paiz v. State Farm Fire & Cas. Co., 880 P.2d 300, 307-08 (N.M. 1994). Bad faith may also be shown when an insurer acts to injure its insured's right to receive the benefit of the contract by placing its interests over those of the insured. See Dairyland Ins. Co. v. Herman, 954 P.2d 56, 60-61 (N.M. 1997); Lujan v. Gonzales, 501 P.2d 673, 680-81 (N.M. Ct. App. 1972).

Here, the coverage issues were difficult and debatable. The HUD complaint alleged primarily discrimination claims, which are not covered by the policy. See, e.g., United States v. Security Management Co., 96 F.3d 260, 264-66 (7th Cir. 1996) (holding discrimination against potential tenants not covered by policy because they had no enforceable "right" of occupancy); Bernstein v. North E. Ins. Co., 19 F.3d 1456, 1458 (D.C. Cir. 1994) (same); Boston Hous. Auth. v. Atlanta Int'l Ins. Co., 781 F. Supp. 80, 84 (D. Mass. 1992) (holding discrimination claim did not allege invasion of the tenants' right of private occupancy because it was not a trespassory act).

The only claim implicating the policy--that Mr. Winters retaliated against the tenants by harassing them--did not contain facts placing the claim squarely

-11-

within the policy's coverage. Nor did Transamerica's recorded interview with Mr. Winters elicit these facts. After carefully considering the HUD allegations, the district court agreed with the insurer that there was no coverage. Although we reach a different conclusion, finding that HUD's allegations raise an inference that Mr. Winters' harassment of his tenants potentially invaded their right to private occupancy, the issue is certainly debatable. See TPLC, Inc. v. United Nat'l Ins. Co., 44 F.3d 1484, 1496 (10th Cir. 1995) (affirming summary judgment in favor of insurer on bad faith claim because law unsettled, and authority from other jurisdictions supported insurer's position); Suggs v. State Farm Fire & Cas. Co., 833 F.2d 883, 890-91 (10th Cir. 1987) (reversing denial of insurer's motion for judgment as a matter of law when insurer had a good faith basis for withholding payment).

In their motion for summary judgment, plaintiffs relied on the insurer's failure to investigate the HUD allegations to show bad faith. Transamerica had no duty to investigate, however, because this is a third-party insurance case. See Valley Improvement Assoc., 129 F.3d at 1121-23 (holding New Mexico does not impose a duty to investigate in third-party claims). Instead, the duty to defend must be determined simply by comparing the complaint to the policy, without regard to what an independent investigation would show. See id.; Mullenix, 642 P.2d at 606 (holding duty to defend arose from ambiguous allegations in

-12-

complaint, even though insurer's investigation revealed there was no coverage). For these reasons, we affirm the summary judgment in favor of Transamerica on the claim that it violated its duty of good faith and fair dealing.

## C. Statutory Claims

We also affirm the judgment in favor of Transamerica on the claims that it violated New Mexico statute. Given that coverage was debatable, plaintiffs have not shown a triable issue whether the insurer's denial of coverage was a knowing misrepresentation, as required by New Mexico statute § 59A-16-20, and the insurer's request to be notified if a lawsuit were to be filed did not misrepresent whether the HUD administrative charge was a suit. Further, the insurer's denial letter, denying coverage based on several identified sections, was sufficiently prompt and reasonable to satisfy the statute. For the same reasons, the insurer's alleged misrepresentations did not raise a triable issue regarding the use of unfair, deceptive, or unconscionable trade practices under New Mexico statute §§ 57-12-2(D) & (E).

The judgment of the district court is AFFIRMED in part and REVERSED in part, and the case is REMANDED for further proceedings to calculate the damages caused by Transamerica's breach of its duty to defend.

Entered for the Court

-13-

Mary Beck Briscoe
Circuit Judge

No. 98-2000, *Winters v. Transamerica Insurance Company*

**BRORBY** , Circuit Judge, dissenting.

I agree with the majority Transamerica had no duty to defend or indemnify claims under the advertising injury coverage, Transamerica did not refuse to defend in bad faith, and Transamerica did not violate New Mexico statute. I disagree, however, with the majority's conclusion the retaliation claim against Mr. Winters implicated policy coverage for invasions of the right of private occupancy. Accordingly, I dissent from that portion of the majority opinion.

The policy at issue provided "personal injury" liability coverage for injuries arising from "wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor." While I agree it is reasonable to construe the "personal injury" provision to cover those acts taken by the Winters, as owners, landlords or lessors, against their tenants, I strongly disagree that HUD's allegations raised the possibility of liability coverage for invasion of right of private occupancy under that provision. New Mexico law states, "an insurer's duty to defend ... is determined ... by the allegations of the injured party's complaint." *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 985 (10th Cir. 1994). The facts need not be so clear as to determine from the face of the complaint whether the action is within the policy's coverage; however, "abstract

and completely unsubstantiated allegations will not do." *Id*. (citing *Foundation Reserve Ins. Co. v. Mullenix*, 642 P.2d 604, 605 (N.M. 1982)).  Our examination is thus limited to the four corners of the complaint, which must state facts tending to show an occurrence within the policy's coverage.  Stated differently, we must determine whether an insurer has a duty to defend "by comparing the factual allegations in the complaint with the insurance policy." *Lopez v. New Mexico Pub. Schls. Ins. Auth.*, 870 P.2d 745, 747 (N.M. 1994).

As the majority acknowledges, the HUD complaint alleged primarily discrimination claims, which undisputably lie outside policy coverage.  With regard to retaliation, the only facts alleged were that Mr. Winters "harassed complainants in various ways," and that this act of "unlawfully harassing complainants" violated the Fair Housing Act by "coercing, intimidating, threatening or interfering with the exercise or enjoyment of rights ... granted under the Act," causing the tenants emotional distress.  Comparing the language of the "personal injury" provision to the complaint,  I simply cannot conclude HUD's general allegations of harassment in violation of the Fair Housing Act raise an inference or tend to show that Mr. Winters invaded his tenants' right to private occupancy, thus implicating coverage under the Transamerica policy.  I therefore would affirm the district court as to all issues.