F I L E D
United States Court of Appeals
Tenth Circuit

NOV 13 1997

PATRICK FISHER
Clerk

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

VALLEY IMPROVEMENT
ASSOCIATION, INC., formerly known
as Horizon Communities Improvement
Association of New Mexico, Inc.,

      Plaintiff-Appellee-
      Cross-Appellant,

and

INSURANCE COMPANY OF NORTH
AMERICA,

      Plaintiff-Intervenor-
      Appellee,

v.

UNITED STATES FIDELITY AND
GUARANTY CORPORATION,

      Defendant-Appellant-
      Cross-Appellee.

No. 95-2144
No. 95-2154

---

**ORDER ON PETITIONS FOR REHEARING**

Filed November 13, 1997

---

Before **KELLY, HOLLOWAY,** and **WEIS,**[*] Circuit Judges.

---

[*]Honorable Joseph F. Weis, Jr., Senior United States Circuit Judge for the Third
Circuit, sitting by designation.

The Court has reviewed the petitions for rehearing of the Appellant, United States Fidelity & Guaranty Corporation (USF&G), and of one of the Appellees, Valley Improvement Association, Inc., and has determined that some modifications of the opinion of October 20, 1997, should be made in the interests of justice. Therefore, the Court will issue today a modified opinion, and the opinion of October 20, 1997, is withdrawn and vacated. For the information of the parties, we note that the modifications to the original opinion are as follows:

1. Language on page 10 of the previously filed opinion has been modified to recite correctly the conclusions of law of the district judge and the provisions of the judgment against USF&G.

2. A new footnote 6 has been added on page 26 of the modified opinion to clarify the point that the holding in this case is not in conflict with the case of American General Casualty Co. v. Progressive Casualty Co., 799 P.2d 1113 (N.M. 1990).

3. A new sentence has been added at the end of part V-B, on page 34 of the modified opinion, to instruct the district court on remand to recalculate the amount of prejudgment interest owed to Appellee Insurance Company of North America by USF&G.

In all other respects, the petitions for rehearing are denied. The motion for certification of a question of state law to the Supreme Court of New Mexico is denied.

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 13 1997**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

VALLEY IMPROVEMENT
ASSOCIATION, INC., formerly known
as Horizon Communities Improvement
Association of New Mexico, Inc.,

      Plaintiff-Appellee-
      Cross-Appellant,

and

INSURANCE COMPANY OF NORTH
AMERICA,

      Plaintiff-Intervenor-
      Appellee,

v.

UNITED STATES FIDELITY AND
GUARANTY CORPORATION,

      Defendant-Appellant-
      Cross-Appellee.

No. 95-2144
No. 95-2154

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. CIV-88-848-LH)

John M. Eaves (David A. Garcia and Lisabeth L. Occhialino with him on the brief), of Eaves, Bardacke & Baugh, P.A., Albuquerque, New Mexico, for Appellee and Cross-Appellant Valley Improvement Association of New Mexico, Inc.

Alan R. Wilson (Lawrence M. Glenn and Christina Gratke Nason with him on the brief), of Dines, Wilson & Gross, P.C., Albuquerque, New Mexico, for Appellee Insurance Company of North America.

Joe A. Sturges (Matthew P. Holt with him on the brief), of Sager, Curran, Sturges & Tepper, P.C., Albuquerque, New Mexico, for Appellant and Cross-Appellee United States Fidelity & Guaranty Company.

_____

Before **KELLY, HOLLOWAY,** and **WEIS,**[**] Circuit Judges.

_____

**HOLLOWAY,** Circuit Judge.

_____

Plaintiff-appellee/cross-appellant Valley Improvement Association, Inc. (hereinafter VIA or the insured) brought a state court declaratory judgment action in New Mexico against defendant-appellant/cross-appellee United States Fidelity & Guaranty Corporation (hereinafter USF&G) which was removed to federal court and consolidated with other declaratory actions. These consolidated actions concerned whether VIA's general liability insurance carriers, including USF&G, were obligated to defend on VIA's behalf claims made against VIA in certain state court litigation. All of the liability insurance carriers except USF&G eventually settled with VIA, including plaintiff-in-intervention/appellee Insurance Company of North America (hereinafter INA). INA, having undertaken the defense of the claims made against VIA, intervened in the instant case seeking to compel USF&G to contribute to the cost of that defense.

_____

[**]Honorable Joseph F. Weis, Jr., Senior United States Circuit Judge for the Third Circuit, sitting by designation.

2

USF&G appeals from the federal district court's judgment, which followed a bench trial, holding that USF&G breached its duty to defend VIA in the underlying litigation in New Mexico state court. In the alternative, USF&G also contests the amount of the judgment entered in favor of INA (68.4% of some $1.6 million) and VIA (some $498,000). USF&G also appeals the district court's award of attorneys' fees to VIA for the instant case (some $301,000 and some $60,800 of prejudgment interest).

VIA cross-appeals from the district court's decision to strike VIA's third amended complaint, by which VIA had attempted to raise for the first time, claims of bad faith breach of the insurance obligation and a statutory claim of unfair practices. VIA also cross-appeals from the final judgment on the contention that the district judge erred in not awarding VIA punitive damages for bad faith or unfair practices. In this part of its cross-appeal, VIA argues that even after the third amended complaint had been stricken, VIA should have been awarded all relief supported by the evidence, as provided by Fed. R. Civ. P. 54(c). The following summary of some of the district court's findings of fact, although merely a sketch in broad terms, will serve as the context for the issues to be addressed.

**I**

***Background.*** The background of this litigation is an apparently ill-fated effort to develop large tracts of land in Valencia County, New Mexico, which lie about 30 miles south of Albuquerque. The area now referred to as the Rio Communities consists of approximately 55,000 acres which have been platted into two subdivisions of approximately 100,000 lots.

Our record does not reveal how many of these lots were sold by the developer, but we are informed that only about 6,000 people actually live on these lands.

The developer of this ambitious project was Horizon Corporation. Horizon formed VIA (which was originally named the Horizon Communities Improvement Association) and deeded all of the lands to it. VIA retained some of the lands, which were unplatted and were to be used for purposes such as school sites, parks and green belts. As to the bulk of the lands, VIA recorded indentures to run with the land and conveyed the properties back to Horizon. The indentures require, *inter alia*, the purchasers of lots to pay assessments to VIA, and require VIA to use these funds for the benefit of the properties collectively, such as for improvements including streets and drainage systems.

Horizon marketed the properties as risk free and suitable for short term investment. In administrative proceedings the Federal Trade Commission later determined that Horizon's marketing practices constituted a "vicious consumer fraud" and that the lands were particularly ill-suited for short term investment because the size of the development and its distance from Albuquerque virtually precluded full development until well into the next century. The FTC found that Horizon had never intended to pursue full development of the properties.

A group of purchasers of lots within the communities (hereinafter the landowners or the Yates plaintiffs) brought suit in 1986 against VIA and its individual directors. This underlying litigation (hereinafter the Yates action or the state court action) is still pending

4

so far as our record shows. It has been the subject of one published opinion. Yates Exploration, Inc. v. Valley Improvement Association, 773 P.2d 350 (N.M. 1989).[2] Approximately one year after the state court action began, VIA made demand on USF&G for defense of the action. USF&G declined to assume the defense. The instant litigation concerns primarily whether USF&G was bound to defend the state court action on behalf of its insured, VIA. As we discuss below, USF&G's duty, if any, depends on the language of the policy and the allegations made against VIA by the landowners, which we shall briefly summarize.

**_Allegations made against VIA in the state court litigation._** The landowners (sometimes hereinafter the Yates plaintiffs) in the state court litigation sought but were denied certification of their suit as a class action. The complaint was denominated as a "Complaint for Accounting, Declarative and Injunctive Relief, Turn Over of Funds, Damages, and Other Legal and Equitable Relief." II Aplt. App. at 515. The Yates plaintiffs have amended their complaint at least three times, but many core allegations have remained essentially unchanged. The original complaint, the one on which VIA's demand to USF&G for defense was based, is over thirty pages long. II Aplt. App. at 514-50. The primary thrust of the complaint is that the landowners had paid as much as $15 million in assessments to VIA over the years, for which the landowners had received little benefit in improvements to

---

[2]One of the other declaratory actions filed in connection with this matter has also resulted in a reported decision by the state's highest court. See Valley Improvement Association v. Hartford Accident & Indemnity Co., 863 P.2d 1047 (N.M. 1993).

the subdivisions. Some of the funds received from the assessments were allegedly used unlawfully, while the bulk of the funds were simply invested rather than spent for the benefit of the properties as intended.

The landowners alleged that the assessments are unfairly made, varying greatly from lot to lot on some unknown, arbitrary basis having no relationship to the relative value of the lots. It was alleged that VIA had foreclosed against many of the properties to collect unpaid assessments, while other former owners had permitted the state to seize and sell their properties for unpaid taxes because the value of the lots had been so diminished by the failure of the development plans and the burden of the assessments imposed by the indentures. The landowners prayed for various forms of relief including dissolution of VIA, an accounting for all assessments received by VIA, invalidation of the indentures, restitution of the collected assessments, and a catch-all request for other forms of legal and equitable relief.

The Yates plaintiffs' complaint also alleged wrongful acts and conduct by VIA and Horizon to the "detriment and damage" of plaintiffs and their class, II Aplt. App. at 531; that VIA entered into a lease with one Burris permitting him to graze cattle on certain lands for five years; and that Burris grazed his cattle on the Properties during and after this period. Id. at 521. The landowners aver that their properties were grazed and overgrazed, which was wrongful conduct by VIA and Horizon. Id. at 531, 534. These allegations are important in the consideration of the insurance coverage issues in the instant case, as we shall discuss below.

6

*VIA's insurance coverage.* The <u>Yates</u> landowners' allegations in the state court action arguably address conduct by VIA and its directors going back to VIA's formation in 1969. From a chart prepared by the district court, II Aplt. App. 471-473, it appears that VIA first obtained general liability insurance in 1975 from USF&G. USF&G remained VIA's liability insurer for six years, after which coverage was obtained from a variety of other insurers, including appellee INA, which provided the coverage for three years. We are told that all of the insurance carriers other than USF&G have settled with VIA.

*Terms of the USF&G policy.*[3] The USF&G policy provided coverage for bodily injury or property damage as follows:

> The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay *as damages* because of
> A. bodily injury or
> B. *property damage*
> to which this insurance applies, *caused by an occurrence*, and the Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent . . . .

II Aplt. App. at 476 (emphasis added). The policy defines "property damage" as

> (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.

---

[3]Because the parties refer us to only one policy, we presume that either the policy originally issued in 1975 was renewed on the same terms in the five subsequent years or that any subsequently issued policies contained the same material terms.

Id. The policy defines "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the Insured." Id.

The USF&G policy provided coverage for "personal injury" liability in addition to the coverage for "bodily injury" and property damage. The personal injury liability coverage similarly extended to sums the insured should become "legally obligated to pay as damages." The personal injury coverage was not limited to "occurrences," but was limited to "offenses" committed in the conduct of the insured's business. Three groups of offenses are set out in the policy. Of these, VIA argues that it is entitled to coverage under "Group B," which covers libel or slander, and "Group C," which consists of "wrongful entry or eviction, or other invasion of the right of private occupancy . . . ." Id. at 477.

The property damage liability coverage was limited by Exclusion (k), which provides, *inter alia*, that the insurance does not apply to claims of damage to "property in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control." Aplt. Supp. App. at 686. The property damage liability coverage was also limited by Exclusion (m), which provides, *inter alia*, that the insurance does not apply "to loss of use of tangible property which has not been physically injured or destroyed resulting from . . . a delay in or lack of performance by or on behalf of the Named Insured of any contract or agreement." Id.

8

## II

### *The district court's judgment.*

After a five-day bench trial of this federal insurance controversy, the district court issued unpublished findings of fact and conclusions of law. II Aplt. App. at 470, et seq. The judge held that the landowners had stated claims against VIA potentially within the coverage for both personal injury and property damage liability. He found that the Yates plaintiffs' allegations regarding the imposition of liens on their properties and the foreclosure proceedings which had been brought by VIA stated a claim for personal injury liability because the allegedly wrongful enforcement of liens and wrongful foreclosures could constitute an "invasion of the right of private occupancy."

The federal district judge found that the allegations regarding the cattle grazing lease and the trespasses and overgrazing which allegedly resulted were averments of property damage potentially within the coverage of the policies. He also found that these allegations potentially stated a claim for personal injury within the coverage, citing the policy language covering "wrongful entry or eviction, or other invasion of the right of private occupancy." The district court held that other allegations in the state court action also triggered the duty to defend, but we need not concern ourselves with those other points in this opinion for reasons we will explain.

The judge found that USF&G had waived all defenses not specifically set out in its letters to the insured. He found that Exclusion (k) did not apply. The written findings and

9

conclusions addressed other arguments raised by USF&G based on specific policy language and rejected them.

The court divided the defense obligation among all the insurers and determined USF&G's proportionate share to be 68.4%, based on the total limits of all of the USF&G policies as a percentage of the total limits of all the policies. The total cost of defense of the state court action which had been paid by INA up to the time of judgment in the instant case was determined to be $1,661,271.46. Judgment was entered against USF&G and in favor of INA for $1,136,309.60 based on USF&G's pro rata share (68.4%) of those defense costs.

Further, the court found that VIA was entitled to judgment against USF&G in the total amount of $498,751.89. This total included $55,772 for defense costs in the state court action which VIA had paid without reimbursement from the other insurers, plus prejudgment interest on that amount of $62,594, and another $6,192 representing costs which VIA had incurred in connection with the state court action but had not yet paid. The judgment in favor of VIA also included $8,500 plus accrued interest of $3,171.50 for amounts paid by VIA to settle with some of the landowners. The district judge further held that USF&G had acted unreasonably within the meaning of a New Mexico statute on recovery of attorneys' fees from insurance companies, and included in the judgment in favor of VIA and against USF&G some $301,000 in attorneys' fees incurred in the instant case, plus accrued prejudgment interest of some $60,800.

## III

We review the district court's findings of fact for clear error and its conclusions of law *de novo*. The interpretation of the terms of the insurance policies, like other contracts, is a question of law. However, when the trial court's interpretation is aided by extrinsic evidence it cannot be set aside unless clearly erroneous. Cavic v. Pioneer Astro Industries, Inc., 825 F.2d 1421, 1424 (10th Cir. 1987).

## A

We hold that the district court correctly concluded that the landowners' allegations regarding cattle grazing stated claims potentially within the coverage of the policies and so triggered the duty to defend, and that the allegations did not clearly come within some exclusion from coverage. In the pleading of the Yates plaintiffs demanding judgment against Horizon and VIA, II Aplt. App. at 543, the landowners alleged that VIA, with others, entered into a lease agreement which, *inter alia*, permitted Burris "to graze cattle in *the Subdivisions* for five years"; the plaintiff landowners then alleged that "Burris grazed his cattle on *the Properties* during and after this five year period." Id. at 521 (emphasis added). In a lengthy section of the complaint headed "Wrongful Conduct," the landowners alleged that

> 22. The actions and conduct, and the failures to act, of . . . VIA and certain of the directors and persons in control of . . . VIA, and the authority granted to or reserved by . . . VIA in the Indentures, as alleged in this complaint, have been and continue to be improper, unreasonable, arbitrary, unlawful, illegal, oppressive, unconstitutional, in violation of fiduciary duties and duties of trust and confidence, and constructively fraudulent, to the detriment and damage of the plaintiffs and the class and their predecessors.

11

Id. at 531 (emphasis added).  Furthermore the Yates complaint alleges that"[t]hese actions, practices conduct, failures to act, and authority, of . . . VIA," id. at 531, and others consist, *inter alia*, of the following:  "[t]he permitting of improper use and waste of and trespass upon the Properties by allowing the grazing and the over grazing of the Properties."  Id. at 534 (emphasis added).  The federal judge found that VIA notified USF&G on July 8, 1987, of the Yates action and demanded defense by USF&G against the suit.  Id. at 479.  By letter dated October 14, 1987, VIA was notified that USF&G refused to defend and denied coverage for the Yates action under its policies.  Id. at 479.

In USF&G's first response to VIA's notice of the landowners' claims, Suellen Berry wrote:  "It is unclear to us as to where you feel there is coverage under our policy for . . . any . . . allegations in the suit."  Id. at 552.  VIA, through its attorneys, wrote back listing several specific paragraphs of the landowners' complaint which it contended stated claims potentially within the coverage.   In her reply to this letter, which was the final communication from USF&G to its insured so far as we are informed,  Ms. Berry referred to all of the specific paragraphs which VIA had identified, save one, and asserted that there was no "fortuitous event which would constitute either bodily injury or property damage." Id. at 554.  Focusing specifically on the paragraph of the landowners' complaint which contains the allegations, referred to above, that permitting the grazing was "wrongful conduct," Ms. Berry asserted that if this paragraph were construed as alleging property damage, coverage would nevertheless be excluded under Exclusion (k).  At trial, she testified

12

that she "assumed" that the insured either owned or had control of "the Properties" in order to be able to enter into the Burris lease. INA Supp. App. at 3.

We believe that USF&G's refusal to defend its insured against these allegations cannot be justified by Exclusion (k). Arguably there is some ambiguity in the landowners' allegations. The lease to Burris is alleged to have covered "the Subdivisions," while the grazing is alleged to have injured "the Properties." The landowners had defined these terms in their complaint. "Subdivisions" referred to the entirety of the two subdivisions; "the Properties" referred to the lots owned by the landowners. II Aplt. App. at 517-18. The key question relevant to the potential coverage is whether the landowners' lots were clearly alleged to have been in the custody or control of VIA so that coverage would definitely be foreclosed by Exclusion (k). Such a high level of clarity is demanded in a coverage exclusion under New Mexico law because the liability insurer is "obligated to defend when the complaint filed by the claimant alleges facts potentially within the coverage of the policy." Western Heritage Ins. Co. v. Chava Trucking Co., 991 F.2d 651, 656 (10th Cir. 1993) (citing State Farm Fire & Cas. Co. v. Price, 684 P.2d 524, 528, cert. denied, 683 P.2d 44 (N.M. 1984), overruled on other grounds, Ellingwood v. N.N. Investors Life Ins. Co., 805 P.2d 70 (N.M. 1991)).

It is immaterial that relief of a type not covered by the policy may also be sought against the insured, or that relief for alleged acts not covered by the policy may also be sought, as long as the claimant has "pleaded any grounds against the insured coming within

13

the terms of the policy." American Employers' Insurance Co. v. Contintental Cas. Co., 512 P.2d 674, 677 (N.M. 1973); Chava Trucking Co., 991 F.2d at 656 ("Although certain claims in the underlying state court action may have been outside the policy, other claims clearly were within the scope of the policy."). The insurer is required to resolve ambiguities in favor of potential coverage. Price, 684 P.2d at 528. In New Mexico, as in most jurisdictions, the duty to defend is broader than the duty to indemnify. Id.

We hold that under these standards, USF&G's refusal to defend was unjustified. Although USF&G's inference that VIA had exercised control over the landowners' lots, triggering Exclusion (k), might be reasonable, it certainly is not the only reasonable inference to be drawn from the broadly-worded pleading. It could also be reasonably inferred that the grazing and overgrazing allegedly allowed by VIA and Horizon damaged the landowners' properties that were held in the landowners' own custody or control, and that damage from cattle coming onto their properties, permitted by acts of VIA and Horizon, resulted in damage chargeable to VIA.[4]

---

[4]The evidence showed that the developer, Horizon, had retained title to large blocks of land within the subdivision, which had never been platted or sold. VIA Supp. App. at 331-32, 339-42. A reasonably prudent person would have realized that this state of affairs was a possibility in a development of this size. Horizon was identified in the landowners' pleadings as a lessor on the Burris lease, along with VIA. Furthermore, VIA had title to portions of the subdivisions which were intended to be dedicated to common purposes, such as parks and schools. II Aplt. App. at 561. The Burris lease covered only property owned by Horizon or VIA, not lots owned by the individual landowners. VIA Supp. App. at 376-78. Nevertheless the inference that VIA and Horizon were being charged with causing or permitting the grazing damage to the landowners' properties was reasonable and supports the holding that coverage existed.

14

USF&G's duty to defend is to be determined by the allegations of the complaint against its insured and the facts actually known to USF&G at the time of demand. American General Fire & Casualty Co. v. Progressive Casualty Co., 799 P.2d 1113, 1116 (N.M. 1990). We think that the landowners' pleadings, although ambiguous, could have been construed as stating a claim for property damage potentially within the coverage of the policy, not excluded by Exclusion (k). USF&G failed to construe the landowners' allegations in favor of such potential coverage. This is a breach of duty under New Mexico law. Instead of construing the allegations as not within the coverage, as USF&G apparently did,

> [t]he insurer must also fulfill its promise to defend even though the complaint fails to state facts with sufficient clarity so that it may be determined from its face whether or not the action is within the coverage of the policy, provided the alleged facts tend to show an occurrence within the coverage.

Foundation Reserve Insurance Co. v. Mullenix, 642 P.2d 604, 605 (N.M. 1982) (quoting American Employers' Ins. Co. v. Continental Cas. Co., 512 P.2d 674, 676 (N.M. 1973)). We therefore reject USF&G's claim of error in the trial judge's ruling that coverage was provided under the property damage provision because of the grazing and overgrazing allegations.

**B**

Contrary to USF&G's position, the district court held that the landowners' allegations set forth several claims potentially within the policy's coverage for personal injury. First, the judge found that the averments regarding the trespass of cattle, grazing and overgrazing on the landowners' properties, triggered coverage under both the "personal injury" as well as the property damage coverages. II Aplt. App. at 484, ¶ 60. We agree that these allegations

15

stated a claim potentially within the coverage for personal injury due to wrongful entry on the property of another under the "offenses" described in Group C of the policy. Group C covers these offenses: "wrongful entry or eviction, or other invasion of the right of private occupancy . . . ." Id. at 477.

USF&G argues that the policy language requires the offense of trespass or wrongful entry to have been committed by VIA itself. The policy does not unambiguously say so, however. Instead, the policy covers damages which the insured shall become obligated to pay because of injury "arising out of one or more of the following offenses committed in the conduct of [VIA's] business . . . ." Id. New Mexico follows the rule that any ambiguities in the language of an insurance policy are to be construed against the insurer, and a clause is ambiguous if it is "reasonably and fairly susceptible of different constructions." Knowles v. United Services Auto Ass'n, 832 P.2d 394, 396 (N.M. 1992). We conclude that the language involved here is fairly susceptible of the construction that coverage would exist in circumstances in which the insured was only indirectly responsible for the trespass. We hold that USF&G was obligated to defend based on the trespass allegations and the Group C personal injury coverage, and reject USF&G's claim of error in the trial judge's holding against USF&G thereon.

We also agree with the district court's conclusion that the allegations of wrongful foreclosures stated a claim potentially within the coverage of the policy for personal injury, also under Group C "offenses," specifically for "invasion of the right of private occupancy."

16

As the district court correctly noted, the coverage for personal injury liability is not limited to "occurrences" and so no "accident" needs to have been alleged by the landowners.

USF&G attacks the district court's conclusion that the landowners' pleadings stated a claim potentially within this part of the coverage by pointing out that, as the facts turned out, no foreclosures, wrongful or otherwise, occurred during the years that USF&G's policies were in force. This argument is in direct and irreconcilable conflict with USF&G's position, with which we agree, that the duty to defend is to be determined based only on the allegations made against its insured and the terms of its policies. Extrinsic evidence which tends to show that a claim is not actually within the coverage will not absolve the insurer of its duty to defend against allegations which are potentially within the coverage. Mullenix, 642 P.2d 604.

In addition, we believe that the landowners' allegations stated a claim potentially within the policy's coverage for personal injury under the Group B offenses, which in pertinent part includes "the publication or utterance of a libel or slander or of other defamatory or disparaging material . . . ." We believe that this language would cover claims of slander of title, and USF&G does not contend otherwise. The district judge found that landowners who failed to pay the assessments as required by the indentures "held their Subdivided Lots subject to an assessment charge and a lien in favor of VIA." II Aplt. App. at 485. The landowners alleged that the indentures filed against their properties were wrongful. As we noted previously, the landowners alleged that the assessments were

17

"discriminatory, oppressive, unfair, arbitrary, and unreasonable." <u>Id</u>. at 524. These allegations, even though they do not expressly state a claim for slander of title, must be read as potentially stating a claim within such coverage.[5]

In sum, we hold that USF&G had a duty to defend on the ground of potential coverage stated by the <u>Yates</u> action allegations under the policy provisions as follows: there were allegations which could be reasonably construed as within the property damage coverage by the averments of grazing and overgrazing allegedly allowed by VIA and Horizon, causing damage to the <u>Yates</u> landowners' properties, chargeable to VIA; there were also landowners' allegations that could reasonably be construed as within the policy's coverage for personal injury due to the trespass allegations of "offenses" under Group C of the policy covering "wrongful entry or eviction, or other invasion of the right of private occupancy"; there were landowner allegations, also potentially within policy coverage, for personal injury under Group B offenses that include "publication or utterance of a libel or slander or other defamatory or disparaging material."

Having determined that USF&G had a duty to defend VIA on at least these bases -- property damage and personal injury claims -- we need not resolve many of the issues raised

---

[5]We focus here, as we have throughout this opinion, on the landowners' original pleading. USF&G argues that the landowners did not specifically plead the tort of slander of title until their third amended complaint. We conclude that what had been pleaded in the original complaint was sufficient, however, and so do not rely on the third amended complaint of the landowners in our analysis.

18

by the parties regarding whether other allegations stated claims potentially within the coverage or whether other defenses to coverage have been shown by USF&G.

## C

As a threshold matter prior to considering other arguments made by USF&G, we note that USF&G's letter to the insured by which it denied coverage and declined to provide a defense stated only two grounds for USF&G's decision: that there was no bodily injury or property damage alleged as defined by the policies, and that, if the cattle grazing allegations were construed as allegations of property damage, coverage was nevertheless excluded under Exclusion (k). The threshold issue is whether USF&G has waived defenses not asserted in this communication with its insured.

Under New Mexico law, the insurer has waived defenses not relied on in its formal denial of coverage if, but only if, the insured makes a showing of "detriment or prejudice." Larson v. Occidental Fire & Casualty Co., 446 P.2d 210, 212 (N.M. 1968), overruled on other grounds, Estep v. State Farm Mutual Auto. Ins. Co., 703 P.2d 882 (N.M. 1985). Unfortunately, we have found no guidance in the cases after Larson as to what kind of showing of detriment or prejudice by the insured will suffice. VIA relies on cases from Missouri which have held that being forced to sue for a declaration of coverage is sufficient prejudice. See, e.g., Stone v. Waters, 483 S.W.2d 639, 645 (Mo. Ct. App. 1972). But see Brown v. State Farm Mutual Auto. Ins. Co., 776 S.W. 2d 384, 387-89 (Mo. 1989) (en banc) (limiting Stone v. Waters). On the other hand, USF&G argues that litigation would have

19

been necessary in any event to test the defenses raised in the denial letter; thus, USF&G urges that it is illogical to contend that VIA suffered prejudice from the mere failure to include all defenses in the denial letter.

With little guidance from the New Mexico courts as to what would constitute prejudice as required by Larson, we are reluctant to decide this issue unless absolutely necessary. We find it is not necessary. Instead, we will assume without deciding that USF&G did not waive any additional defenses. We conclude that the district court's determination that USF&G breached its duty to defend was correct, notwithstanding the additional defenses raised.

**D**

USF&G argues that it was not obligated to defend VIA in the state court action because the landowners sought no damages, only equitable relief. We find no merit in this argument. It is true, as USF&G contends, that the landowners sought several equitable remedies. Nevertheless, it is clear that the landowners' pleading sought damages for injuries to their properties from the cattle grazing. USF&G's arguments to avoid this simple and readily apparent fact are to no avail. USF&G argues that the allegations about cattle grazing could not really have been meant to support a claim for damages but were merely included as instances of VIA's breaches of its duties to the landowners. This is so, USF&G contends, because any claim for damages would have been barred by limitations and by failure to comply with a New Mexico statute which precludes recovery for damage caused by

trespassing livestock unless the plaintiff has fenced his property. N.M. Stat. Ann. § 77-16-3 (Michie Supp. 1993).

As VIA and INA correctly point out, it completely misses the mark to say that the claims against the insured were doomed to failure because of the existence of valid defenses. Under the terms of the policies, it was clearly USF&G's duty to resist the claims and to raise these defenses to them on behalf of its insured. USF&G promised to defend actions even if groundless, false, or fraudulent. The contention that USF&G was not bound to defend an action in which the statute of limitations or some other defense could have been raised with some likelihood of success conflicts directly with USF&G's binding agreement.

### E

USF&G also argues that VIA is collaterally estopped from arguing that the landowners claimed damages because of prior rulings by two courts which, USF&G contends, determined the issue adversely to VIA. In its brief-in-chief, USF&G failed to show that this issue was raised below, and we need not consider it. 10th Cir. R. 28.2(b). Parties should not ignore the fundamental requirement of showing that the issues they bring before this court were properly raised below. Fulfilling this requirement by moving to supplement the appendix after the adversary has brought the dereliction to the attention of the court is unsatisfactory to say the least.

In any event, we are not persuaded that the judgment below should be reversed on this basis. USF&G's first argument for collateral estoppel or issue preclusion is based on

21

developments in the state court action. VIA had filed a third-party complaint for contribution and indemnity against Horizon and took an interlocutory appeal from the district court's dismissal of that claim. In affirming the trial court's dismissal of the third-party complaint, the Supreme Court of New Mexico took note of the fact that much of the relief which the landowners sought against VIA in the primary action was equitable in nature. <u>Yates Exploration</u>, 773 P.2d at 354.

We first note that this issue concerns only the third-party complaint by VIA against Horizon, mentioned above. As far as the record developed by USF&G shows, VIA may simply have not alleged in that third-party complaint that Horizon was obligated to indemnify it for any damages that might be awarded to the landowners on those allegations. As the party claiming the benefit of the doctrine of issue preclusion, USF&G had the burden of establishing all facts necessary for its application.

Perhaps more importantly, a final judgment is required before applying issue preclusion. <u>C & H Construction & Paving Co. v. Citizens Bank</u>, 597 P.2d 1190, 1200-01 (N.M. 1979). The orders relied on by USF&G have not become final, as far as our record shows. Federal courts are directed to give the judgments of a state court the same effect that the courts of that state accord to its judgments. 28 U.S.C. § 1738; <u>Dixon v. Richer</u>, 922 F.2d 1456, 1459 (10th Cir. 1991). New Mexico would not give preclusive effect to the ruling on which USF&G relies because the proceedings in the state court have not culminated in a final

judgment. Consequently, we will not give preclusive effect to such an interlocutory ruling either.

USF&G also contends that collateral estoppel prevents VIA from contesting the application of Exclusion (k), based on an order entered by Judge Campos in litigation between VIA and another insurer, Atlanta International Insurance Company (before the several declaratory judgment actions were consolidated, apparently). Of course, federal law controls the preclusive effect of the decisions of federal courts, and federal law requires a final judgment before applying issue preclusion, just as New Mexico does. See, e.g., Affiliated Ute Citizens v. Ute Indian Tribe, 22 F.3d 254, 256 (10th Cir. 1994). USF&G's argument again fails for lack of a final judgment to support issue preclusion.

Accordingly, we conclude that the district court correctly declined to apply the doctrine of issue preclusion or collateral estoppel and properly permitted VIA to demonstrate that the landowners' complaint sought an award of damages for injury to property, among the other remedies sought.

**F**

USF&G also argues that the cattle grazing allegations do not give rise to the duty to defend because there is no allegation of an "occurrence" as required by the policies. USF&G contends that the allegations are only that VIA entered into a cattle grazing lease, which clearly was intentional. Such acts cannot be accidents, it urges, and so cannot constitute occurrences within the meaning of the policy language. This argument is built upon a false

23

premise. The policy language does not limit coverage to incidents in which the accident results from the direct act of the insured, as USF&G's argument assumes. Although the landowners' pleadings do not allege an accident, neither do they clearly indicate that the overgrazing was not the result of an accident. The claims were potentially within the coverage for property damage liability and should have been defended by USF&G.

## IV

### A

The district court found that "USF&G acted 'unreasonably' as that term is used in § 39-2-1 NMSA 1978, in failing to honor or pay VIA's claim for defense" in the state court action. II Aplt. App. at 489. Based on that finding, the district judge awarded VIA its attorneys' fees incurred in the instant action (some $301,000 in fees) and some $60,800 in prejudgment interest. USF&G argues that it acted reasonably and so is not liable for VIA's attorneys' fees in the instant action under the statute cited by the district judge.[6]

---

[6]The statute cited by the trial judge expressly states that its provision for attorneys' fees applies "where an insured prevails against an insurer who has not paid a claim on any type of *first-party* coverage . . . ." N.M. Stat. Ann. § 39-2-1 (Michie 1978) (emphasis added). The insured person may be awarded reasonable attorneys' fees and costs on a finding by the court that the insurer acted unreasonably in failing to pay the claim. In the instant case the district judge stated the following in his conclusions of law:

> 12. Allegations exist in all of the Yates complaints that trigger a duty on the part of USF&G to defend VIA against the Yates Action.

> 13. VIA has first-party coverage under the USF&G Policies which obligates USF&G to defend VIA against the Yates Action.

24

Although the district judge's findings and conclusions are quite detailed, he did not explicitly identify the factual basis for finding that USF&G's conduct was unreasonable. The judge did make a specific finding that USF&G had conducted no investigation and that this was in accord with its general practice on liability claims. In his findings of fact in the instant case, the trial judge found:

> 69. Beyond an examination of the USF&G Policies and the original complaint in the <u>Yates</u> Action, USF&G did not research or conduct any factual investigation into the <u>Yates</u> Action allegations nor did it request that VIA furnish it with any specific information about these allegations prior to refusing to defend and provide coverage.

> 70. It was the practice of USF&G at the time VIA made its claim for defense against the <u>Yates</u> Action not to investigate the claims of its insured, beyond reading the complaint and the policy, before making coverage determinations.

II Aplt. App. at 486. We view these statements as ultimate factual findings by the district judge which are intertwined with his analysis that USF&G is liable for attorneys' fees and costs under § 39-2-1. While not made explicit, we feel that the ultimate finding of failure to

---

II Aplt. App. at 492.

It would appear there is a serious question whether § 39-2-1 NMSA 1978 applies in the instant case, which would seem to us to be a *third-party* action. However, the conclusions we have quoted above seem to treat this as a *first-party* action within the meaning of the statute. Moreover, as noted in text, the judge found that "USF&G acted 'unreasonably,' as that term is used in § 39-2-1 NMSA 1978, in failing to honor or pay VIA's claim for defense in the <u>Yates</u> Action." II Aplt. App. at 489.

On appeal USF&G does not argue that the statute is inapplicable to this controversy because this is a *third-party* action against it, nor does any other party suggest in their briefs that the statute is inapposite for such reason. Accordingly we are accepting the statute as applying here, without deciding this troublesome point.

25

investigate was a critical part of the judge's analysis, if not the sole basis for his ruling that the insured may be awarded attorneys' fees and costs under the statute for the insurer having acted unreasonably.  Id. at 489.

USF&G argues that it had no duty to investigate the allegations made against its insured before deciding whether to defend the state court action on its insured's behalf. USF&G goes on to say that the district judge made the determination that its conduct had been unreasonable based only on the erroneous view that USF&G was bound to investigate the allegations before making its coverage decision.  We agree with USF&G that New Mexico law does not impose on the insurer the duty of investigating third-party claims before making the initial determination whether to defend its insured against the claims.  Our analysis of this legal issue follows.

**B**

We conclude that under New Mexico law USF&G violated no duty by basing its coverage determination on the allegations of the landowners' complaint in the state court action and the language of the policy.  To the contrary, the New Mexico appellate courts have repeatedly stated that this is precisely what the liability insurer is to do.  See, e.g., Foundation Reserve Insurance Co. v. Mullenix, 642 P.2d 604, 605-06 (N.M. 1982).[7]

---

[7]As we have noted, *supra*, the duty to defend may also arise from unpleaded facts actually known to the insurer which arguably bring the claim within the scope of the coverage.  American General Fire & Casualty Co. v. Progressive Casualty Co., 799 P.2d 1113, 1116 (N.M. 1990).  VIA does not assert that there was any evidence introduced below of extrinsic facts actually known to USF&G.

In Mullenix, an automobile liability policy was issued to the insured for his towing business. The policy provided that unless an additional premium were paid, there would be no coverage for damage to a vehicle being towed. The insured was involved in an accident in which a truck which he had been towing was damaged, and he was sued as a result. The allegations of the complaint against the insured were unclear about the circumstances of the accident, merely alleging that the insured had operated his tow truck negligently and that the claimant's towed truck had been damaged as a result. The insured made demand on the insurer to defend and indemnify him. The insurer refused, citing the exclusion for towed vehicles which we have described.

In the subsequent declaratory judgment action, the New Mexico Court held that the insured was entitled to a defense because of the ambiguity in the allegations of the pleading filed against him by the owner of the damaged truck. From the face of the pleading it could not be determined with certainty that the incident came within the exclusionary language. Most significantly for our purposes, the court applied the principle that the duty to defend is to be determined from the allegations made against the insured, even though in the particular case the insurer knew the actual facts from its investigation and so knew that there was no coverage. The court said:

> As it now stands, the complaint tends to show an occurrence within the coverage of the policy. . . . [T]he complaint filed in this case alleges facts within the coverage of the policy, and it is the duty of the insurer to undertake the defense even though its own investigation has revealed that the claim sued upon is not in fact covered.

27

642 P.2d at 606.

USF&G cites a number of other cases from the New Mexico courts which also state that the duty of the insurer is determined by comparing the allegations of the complaint against the insured with the coverage language of the policy. See, e.g., Lopez v. New Mexico Public Schools Insur. Auth., 870 P.2d 745, 747 (N.M. 1994) ("Whether an insurer has a duty to defend is determined by comparing the factual allegations in the complaint with the insurance policy.").[8] VIA, on the other hand, relies on our decision in Milliken v. Fidelity & Cas. Co. of New York, 338 F.2d 35, 40 (10th Cir. 1964), to support its contention that USF&G was under a duty to conduct a reasonable investigation before denying coverage. We do not believe that Milliken controls here. In the first place, Milliken arose under Kansas law, not New Mexico law. It is true that our court expressed its holdings in general terms, as if applicable in any state. We do not think the opinion can be read so literally and so broadly, however. In light of the intervening decisions of the Supreme Court of New Mexico which we have noted, and in view of the fact that the holding in Milliken does not even purport to be a prediction of New Mexico law, we conclude that the Milliken opinion is simply inapposite.

---

[8]See also Bernalillo County Deputy Sheriffs Ass'n v. County of Bernalillo, 845 P.2d 789, 791 (N.M. 1992); Insurance Company of North America v. Wylie Corp., 733 P.2d 854, 857 (N.M. 1987); Western Commerce Bank v. Reliance Insur. Co., 732 P.2d 873, 875 (N.M. 1987); American Employers' Insur. Co. v. Continental Casualty Co., 512 P.2d 674, 676 (N.M. 1973).

VIA also contends that the duty to investigate is imposed by statute in New Mexico, citing N.M. Stat. Ann. § 59A-16-20 (Michie Supp. 1995). That statute, which defines and prohibits unfair claims practices, provides in subsection (C) that "failing to adopt and implement reasonable standards for the prompt investigation and processing of insureds' claims" is an unfair practice. VIA also points to Instruction No. 13-1702 in the New Mexico Supreme Court Rules, Uniform Jury Instructions - Civil (Michie 1991), which are mandated for use in New Mexico trial courts by the New Mexico Supreme Court. Instruction No. 13-1702 on its face applies only to first party claims and so is inapplicable. Although not cited by either party, we note that Instruction No. 13-1703 addresses "bad faith failure to defend." In pertinent part, that instruction states: "A liability insurance company must act reasonably under the circumstances to conduct a timely investigation and fair evaluation of its duty to defend."

We note that the statute on which VIA relies was enacted in 1984, and Instruction No. 13-1703 was adopted in 1991. Throughout this period, as we have noted above, the New Mexico Supreme Court consistently held that an insurer is to determine whether to defend a claim against its insured by comparing the pleadings of the underlying litigation with the coverage terms of the policy, and has never held that a liability insurer must investigate the underlying claim.

We conclude that the statute and jury instruction would not be construed by the New Mexico courts as inconsistent with their long line of decisions on the duty of the

liability insurer. Rather, we agree with USF&G's contention that the statute applies to first-party claims only. That is to say, we construe the word "claims" in N.M. Stat. Ann. § 59A-16-20(C) as meaning first-party claims, and not demands for defense against third-party claims. We believe this is the more natural and plain meaning of the term. As to Instruction No. 13-1703, we believe that the "investigation" referred to there must, in light of the many cases on point which we have noted, be construed as meaning the process of comparing the allegations against the insured with the coverage terms of the policy. Accordingly, we do not think that the district court's determination that USF&G acted unreasonably may be affirmed based on USF&G's failure to investigate the facts behind the landowners' allegations in the state court action.

## C

We believe that the question of whether the defendant insurer acted reasonably or unreasonably, within the meaning of the New Mexico statute authorizing the award of attorneys' fees, was properly treated by the district court as an issue of fact. See Jackson National Life Insurance v. Receconi, 827 P.2d 118, 135-36 (N.M. 1992) (holding that the standard under the New Mexico statute is objective and is that of a "reasonably prudent insurer"). Accordingly, we ordinarily would review the judge's ruling under the clearly erroneous standard. This usual standard does not apply here, however, because the finding of fact was tainted by the application of the erroneous legal principle that USF&G was obligated to conduct an investigation before making its determination whether to honor

VIA's demand for defense in the state court action. The reviewing court is not bound by the clearly erroneous standard when the trial court has based its findings on an erroneous view of the law. Inwood Laboratories v. Ives Laboratories, 456 U.S. 844, 855 n.15 (1982); Kelley v. Southern Pacific Co., 419 U.S. 318, 323 (1974); United States v. Singer Mfg. Co., 374 U.S. 174, 194 n.9 (1963).

Instead, after determining that the district court viewed the evidence under an incorrect legal standard, as we have held, our task must be to determine whether the error was harmless. 28 U.S.C. § 2111. Under the circumstances presented, we cannot say that this legal error was harmless. As we have noted, the district judge's only explicit findings to support the ultimate finding that USF&G's conduct was unreasonable were that USF&G had conducted no investigation and that USF&G's normal practice was not to conduct any independent investigation. We do not think that we should speculate as to how the district judge would have resolved the ultimate issue of fact had he not taken an erroneous view of the law governing the insurer's duties.

Instead, we must reverse the ultimate finding that USF&G's conduct was unreasonable in treatment of the coverage claims. We must remand for the district judge to reconsider this issue in light of the principles we have noted, as adopted by the New Mexico court, namely that the insurer should compare the pleadings of the underlying litigation with the coverage provisions of the policy to determine coverage.

## V

USF&G also raises several issues which go to the amount of the judgment entered in favor of VIA and INA. First, USF&G contends that the judgment in favor of VIA is excessive in that USF&G has been ordered to reimburse VIA for defense costs which were not reasonably necessary. Second, USF&G alleges that the trial court erroneously awarded reimbursement to VIA for fees incurred prior to the time that VIA had given USF&G notice of the state court action. Third, USF&G argues that, in calculating the pro rata share of defense costs to be allocated to USF&G, the district judge should have included VIA as a self-insurer for part of the relevant time period, which would result in a lower percentage of the costs of defense being charged to USF&G.

## A

From the beginning of the state court action, VIA has been represented by the same law firm. This firm continued its involvement in the case even after new counsel, retained by INA to represent VIA pursuant to INA's general liability policies, took over the defense in state court. USF&G now contends that, even if it is liable for its share of defense costs, VIA is not entitled to reimbursement for fees charged by counsel of its choosing after counsel retained by INA appeared in the case on VIA's behalf. USF&G takes the position that this is a question of law which we should review *de novo*. However, USF&G has failed to show that this issue was raised below and properly preserved for our review. 10th Cir. R. 28.2 (b). Accordingly, we decline to consider this argument.

32

**B**

USF&G's second claim of error with regard to the amount of the judgment rendered against is that it was erroneously held liable for costs of defense incurred prior to the time it was given notice of the state court action by VIA. USF&G points to documentary evidence produced at trial which shows that VIA had incurred costs of $54,058 in defending the Yates action prior to July 1987, when USF&G was first given notice of the existence of the Yates action. This exhibit also shows that INA reimbursed VIA for these costs. VIA Supp. App. at 293-A. The question raised is whether USF&G was erroneously held liable to INA for its proportionate share of this $54,058 in costs which were incurred before VIA gave notice to USF&G.

INA concedes the legal point that USF&G would not be liable for any portion of the amount at issue because its duty to defend did not arise until it was put on notice. The issue as developed by the parties is simply whether in fact the district court's judgment against USF&G included a proportionate share of the $54,058. We are persuaded that the disputed sum was included in the calculation of the amount of the judgment entered in favor of INA.

The VIA exhibit shows that payment for the disputed $54,058 was received in April 1988. That payment was the first made by INA to VIA and was in the amount of $117,233. A footnote in the exhibit, along with the column showing accrual of expenses, shows that by the time of this payment VIA had incurred additional costs, but the notation states that $54,058 was applied to the costs incurred before July 1988. That same amount, $117,233

(less $.50, no doubt explained by rounding off) appears as the first payment from INA to VIA in an exhibit prepared by INA and used by it to show the amount of its expenditures for which it sought contribution from USF&G. Aplt. Supp. App. at 707-B. This INA exhibit gives a total figure of $1,664,271.30, but our record includes an explanation that an arithmetical error had been made in the calculations shown on this exhibit and that the correct total should have been $1,661,271.46. Id. at 778-A. This was the exact amount found by the district court as the total of INA's incurred expenses as of January 1995, II Aplt. App. at 495, ¶ 33, and the court held that USF&G was liable to INA for its proportionate share of this total. Thus, we are convinced that the ultimate judgment amount erroneously includes a proportionate share of the disputed $54,058.

The findings of the district judge suggest that he contemplated limiting the judgment to be awarded against USF&G to those costs of defense accruing after the date of notice. II Aplt. App. at 486, ¶ 73 ("From the time VIA gave notice to USF&G of the Yates Action, until April, 1988, when INA began reimbursing VIA for certain defense costs, VIA was forced to advance and pay for the entire cost of defending the Yates Action."). Nevertheless, it clearly appears that the district judge inadvertently included the disputed sum in the calculations which led to the ultimate judgment amount. We therefore reverse the judgment in part and remand for correction of the amount awarded in favor of INA. On remand, the court should adjust the amount of prejudgment interest awarded in favor of INA to reflect this reduction in the amount of the judgment.

## C

In its final argument for a reduction in the amount of the judgment against it, USF&G argues that the district court erred in calculating the percentage of the costs of defense of the state court action for which USF&G should be responsible. The judge set USF&G's pro rata share of the costs at 68.4%, based on the ratio of the total limits of all the policies issued by USF&G to the total limits of all the policies issued by all the carriers during the relevant years. During part of this time, VIA was uninsured. USF&G argues that VIA should be deemed to have been self-insured during these years; regarding VIA as a self-insurer would alter the second number of the ratio calculated by the district judge and reduce the pro rata portion attributed to USF&G.

One obvious argument against the approach suggested by USF&G is that, if we were to attempt to apply it, we would not know by how much to decrease USF&G's pro rata share; we would have to assign "policy limits" to the "self-insurance" in some arbitrary way in order to implement USF&G's theory. In other words, we would have to assign fictional limits of liability to the fictional insurance. Fortunately, we need not embark on this fog-enshrouded journey.

We note yet again that USF&G fails to provide any citation to the record to show that this issue was raised below and properly preserved. Both VIA and INA contend that USF&G specifically abandoned this argument at trial. In reply, USF&G asserts that it merely

curtailed its presentation of evidence and its argument on this issue without abandoning or waiving it. We disagree.

In closing argument, during which counsel was attempting to explain USF&G's theory on this issue and the effect that the theory would have on the apportioning of defense costs to USF&G, counsel remarked, "I saw the Court frown when we talked about going all the way back to 1969 and apportioning some time for VIA's self-insurance, and so we'll cross that out completely." VIA Supp. App. at 419 (emphasis added). We are at a loss to imagine how the district judge was to have perceived from this remark that counsel was simply abbreviating his presentation but intended to maintain the position, if for no other reason than to preserve it for appeal. We reject such a notion.

## VI

In the final issue raised in USF&G's appeal, we consider whether the district court erred in granting judgment against USF&G for costs of indemnification. USF&G maintains that it was error to hold it liable for a percentage of the cost of settlements previously made with certain of the landowners and that the district judge erroneously held that USF&G would be liable for the same percentage (68.4%) of any damages that may ultimately be recovered against VIA by the landowners.

As to holding USF&G liable for its pro rata share of settlements previously made, the district court did not err in not first determining whether any of the claims settled were within the coverage of the policies. The judge found that the modest amount of the settlements was

36

reasonable, and USF&G does not dispute that finding. Because we have affirmed the district judge's holding that USF&G breached its duty to defend, USF&G will not be heard to complain that the claims might not have been within the coverage. "When an insurance company unjustifiably fails to defend it becomes liable for a judgment entered against the insured and for any settlement entered into by the insured in good faith." State Farm Fire & Casualty Co. v. Price, 684 P.2d at 531. The only restriction on this principle is that the settlement must be reasonable. Id. There is no merit to USF&G's attempt to avoid liability for its insured's reasonable settlements with some of the landowners.

As for the contention that the district judge erred in decreeing that USF&G's pro rata share of indemnification responsibility would apply to any future judgment obtained by the landowners against VIA, we simply find that the district judge did not make any such ruling. It is true that there is one statement in the judge's memorandum of findings and conclusions which is ambiguous and could be construed in the way that USF&G suggests, but there is nothing in the judgment which purports to decide in advance that USF&G will be liable for any part of any judgment which may be rendered in the future.

USF&G's legal argument that such a judgment would be premature is on solid footing, and indeed VIA does not argue otherwise. We have held, as have other courts, that the duty to indemnify must be determined based on the facts as ultimately determined in the litigation against the insured. Because the duty to defend is broader than the duty to indemnify, a holding (such as the one we make here) that an insurer must defend a claim

37

against its insured may not be equated with a holding that the insurer must indemnify its insured against any judgment which may result from the claim. See, e.g., Foundation Reserve Ins. Co. v. Mullenix, 642 P.2d 604, 606 (N.M. 1982). The strength of this principle is perhaps best illustrated in a case in which our court applied its inverse. In a case in which we held that the pleadings against the insured failed to state a claim potentially within the liability coverage, so that the insurer had no duty to defend, we nevertheless modified the judgment of the district court, holding that it was premature to determine that the insurer was not liable to indemnify the insured. Even though the duty to indemnify is narrower than the duty to defend, we held it error to decide that issue in the coverage litigation because to do so "ignores the possibility, even though it may be highly improbable, that a claim may ultimately be established . . . within the coverage of the policy." Culp v. Northwestern Pacific Indemnity Co., 365 F.2d 474, 478 (10th Cir. 1966).

In the instant case, we do not think that the judgment needs to be modified. As we have noted, the statement about which we presume USF&G complains appears only in the court's memorandum of findings and conclusions, not in the judgment. We have no doubt that the district court did not intend the statement to be construed as USF&G fears. We hold that the judgment and the rulings made below have not determined any obligation as to future indemnification, and this holding adequately protects USF&G on this point.

## VII

In its cross-appeal, VIA raises two issues, both of which deal with its attempts to expand its case to include additional claims. When VIA sought leave to file a third amended complaint, in which VIA sought for the first time punitive damages for bad faith and damages under the New Mexico Unfair Trade Practices Act and the New Mexico Unfair Insurance Practices Act, the district judge granted leave conditioned on USF&G's right to later lodge and argue objections to the motion to amend. USF&G filed a motion to strike the third amended complaint with supporting brief, and the judge granted USF&G's motion to strike without explanation.

In its first issue on the cross-appeal VIA argues that notwithstanding the trial judge's decision to strike the third amended complaint, it was entitled to the relief which it sought in the stricken pleading based on the evidence at trial and on Fed. R. Civ. P. 54(c) (except as to party against whom default judgment is entered, every final judgment shall grant relief to which the party in whose favor it is rendered is entitled, even if such relief has not been demanded in the parties' pleadings).. VIA's second issue in the cross-appeal raises the question whether the district judge abused his discretion in striking the third amended complaint.

## A

VIA contends that the district judge erred in not awarding VIA additional relief, which VIA contends was warranted by the evidence at trial, for the common law tort of bad faith

39

breach of the insurance contract and for violations of the New Mexico Unfair Trade Practices Act and the New Mexico Unfair Insurance Practices Act. USF&G states that it would be unfair to award VIA additional relief on the evidence from trial when USF&G was prevented from introducing evidence which would have shown its good faith and thus would have countered VIA's evidence. USF&G asserts that the judge limited its presentation of evidence specifically because its good faith was not in issue, based on the rejection of VIA's third amended complaint.

Fortunately, we need not attempt to untangle these conflicting claims. In its brief, VIA relies completely on USF&G's failure to investigate the landowners' claims as evidence of bad faith and unfair practices. Because we have determined that USF&G had no duty to investigate, and because VIA identifies no other evidence introduced at trial which would support a binding of bad faith, VIA's argument fails. VIA has failed to show that additional damages should have been awarded under these theories.

**B**

The second issue raised in VIA's cross-appeal is whether the district judge abused his discretion in striking VIA's third amended complaint. We have held on several occasions that a district judge must give reasons for denying leave to amend. See, e.g., Gillette v. Tansy, 17 F.3d 308, 312-13 (10th Cir. 1994); Federal Insurance Co. v. Gates Learjet Corp., 823 F.2d 383, 387 (10th Cir. 1987). Here, the district judge gave no reason for his decision to strike the third amended complaint, a decision which VIA characterizes as the equivalent

of denying leave to amend. We agree with VIA that under these circumstances our precedents such as <u>Gillette</u> and <u>Federal Insurance</u> compel us to reverse this order by the district judge and remand with instructions that he state the reasons for the ruling.

USF&G contends that, notwithstanding our general rule, the order need not be reversed where the circumstances make clear the reason for the district court's ruling. USF&G goes on to argue that VIA's effort to raise these new claims or theories of relief was untimely, as a procedural matter, and that amendment would have been futile in any event because the claims would have been barred by limitations. VIA responds by arguing that the unusual circumstances here justified the timing of its motion to amend and that the proposed pleading merely added new theories of relief, not discrete new claims, so that the statute of limitations would pose no problem because of the relation back doctrine as provided in Fed. R. Civ. P. 15(c).

Suffice it to say that we do not think the district court's reasoning is obvious, and we will not speculate about it. We instead adhere to our practice and remand for the judge's statement of his reasons. Accordingly, we need not address the other arguments advanced by the parties on this point.

## CONCLUSION

The judgment of the district court is **AFFIRMED IN PART, REVERSED IN PART,** and the cause is **REMANDED** to the district court for further proceedings consistent with this opinion.

41